**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

WILHELMINA BROWN, KENTON JOHNSON                )
and NIKIA DUNBAR, on behalf of themselves        )
and others similarly situated                    )
                                                 )
                            PLAINTIFFS,           )      Case: 1:17-cv-06396
                                                 )
        v.                                        )
                                                 )
WORLDPAC, INC.,                                   )
                                                 )
                            DEFENDANT.            )
_____          )

**DEFENDANT'S MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO DISMISS AND COMPEL INDIVIDUAL
<u>ARBITRATIONS OR, ALTERNATIVELY, TO STAY THE PROCEEDINGS</u>**

## Table of Contents

PRELIMINARY STATEMENT ................................................................................................... 1

PROCEDURAL HISTORY........................................................................................................ 2

FACTUAL HISTORY .............................................................................................................. 3

ARGUMENT ........................................................................................................................... 6

 I. The Federal Arbitration Act Favors Enforcement Of Arbitration Agreements. ................. 6

 II. Under Illinois Law, WORLDPAC Has The Right To Enforce Plaintiffs' Arbitration Agreements As Third-Party Beneficiaries Of The Contract............................................ 7

 III. Under Illinois Law, Equitable Estoppel Prevents Plaintiffs From Disclaiming The Binding Nature Of The Arbitration Provision. ................................................................ 9

 IV. Plaintiffs Agreed To Arbitrate. ................................................................................... 13

  A. The Parties Entered a Valid Agreement to Arbitrate. ................................................ 13

  B. The Dispute at Issue Falls Within the Scope of the Agreement. .............................. 14

  C. Plaintiffs Refused to Arbitrate. ................................................................................. 14

 V. If This Court Does Not Dismiss The Case And Compel Individual Arbitrations, This Matter Should Be Stayed. ............................................................................................ 15

  A. The Supreme Court has Granted Writs of Certiorari to Resolve a Circuit Split as to the Validity of Class Action Waivers. ....................................................................... 15

  B. This Court has the Authority to Stay a Case Pending the Outcome of the Supreme Court's Decision. ...................................................................................................... 15

  C. The Supreme Court is Poised to Decide the Central Procedural Issue in this Case – Whether Plaintiffs can Pursue a Collective and Class Action Notwithstanding that They Signed Collective and Class Action Waivers. .................................................... 16

  D. Courts have Granted Stays Pending the Supreme Court's Decision. ........................ 18

  E. Even the NLRB is Staying Cases Involving Class Action Waivers Pending a Decision from the Supreme Court...................................................................................... 18

  F. Staying this Case will Conserve the Resources of the Court, WORLDPAC, and Plaintiffs................................................................................................................... 19

  G. WORLDPAC will be Irreparably Harmed Absent a Stay. ......................................... 20

  H. There is a Strong Likelihood that the Employers will be Successful at the Supreme Court. ....................................................................................................................... 21

  I. A Stay will not Substantially Injure any Drivers Seeking to Proceed with Claims.... 22

  J. The Public Interest Favors a Stay. ............................................................................ 22

CONCLUSION....................................................................................................................... 23

## Table of Authorities

*Cases*

*Achey v. Brno Harris Bank, N.A.*,
  64 F. Supp. 3d 1170 (N.D. Ill. 2014) .......................................................................... 12, 20

*Affymax, Inc. v. Johnson & Johnson*,
  420 F. Supp. 2d 876 (N.D. Ill. 2006) .................................................................................. 9

*Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*,
  170 F.3d 349 (2d Cir. 1999) .................................................................................................. 7

*Andrews v. Chevy Chase Bank, FSB*,
  474 F. Supp. 2d 1006 (E.D. Wis. 2007) ............................................................................ 20

*Arthur Andersen LLP v. Carlisle*,
  556 U.S. 624 (2009) ............................................................................................................ 6

*AT&T Mobility, LLC v. Concepcion*,
  563 U.S. 222 (2011) ............................................................................................................ 6

*Battle v. Nissan Motor Acceptance Corp.*,
  2006 U.S. Dist. LEXIS 37916 (E.D. Wis. Mar. 9, 2006) .................................................. 13

*Beattie v. CenturyTel Inc.*,
  2006 U.S. Dist. LEXIS 41200 ........................................................................................... 23

*Cellular Sales of Missouri, LLC v. NLRB*,
  No. 15-1620 (8th Cir. June 2, 2016) ............................................................................ 17, 21

*ChampionsWorld, LLC v. U.S. Soccer Fed'n, Inc.*,
  487 F. Supp. 2d 980 (N.D. Ill. 2007) .................................................................................. 8

*CMAX, Inc. v. Hall*,
  300 F.2d 265 (9th Cir. 1962) ....................................................................................... 15, 16

*D.R. Horton, Inc. v. NLRB*,
  737 F.3d 344 (5th Cir. 2013) ............................................................................................ 17

*Epic Sys. Corp. v. Lewis*,
  196 L. Ed. 2d 595.............................................................................................................. 17

*Ernst & Young LLP v. Morris*,
  196 L. Ed. 2d 595....................................................................................................... 17, 22

*Fyrnetics (H.K.) Ltd. v. Quantum Group, Inc.*,
  293 F.3d 1023, 1029 (7th Cir. 2002) .................................................................................. 7

*Gersten v. Intrinsic Techs., LLP*,
  442 F. Supp. 2d 573 (N.D. Ill. 2006) .................................................................................. 7

*Heller et al v. CVS Pharmacy, Inc. et al*,
  Case No. 3:16-cv-01012, U.S. District Court for the Middle District of Florida order (Stay
  ordered on Feb. 8, 2017) ................................................................................................... 18

*Hoffman v. Deloitte & Touche LLP*,
  143 F. Supp. 2d 995 (N.D. Ill. 2001) .................................................................................. 9

*Holden v. Deloitte & Touche LLP*,
  390 F. Supp. 2d 752 (N.D. Ill. 2005) .................................................................................. 9

*Hughes Masonry Co. v. Greater Clark County School Bldg. Corp.*,
  659 F.2d 836 (7th Cir. 1981) ......................................................................................... 9, 13

*IDS Life Ins. Co. v. SunAmerica, Inc.*,
  103 F.3d 524 (7th Cir. 1996) .............................................................................................. 8

i

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   286 F.R.D. 88, 94 (D.D.C. 2012) ............................................................... 23

*Intercom Ventures, LLC v. FasTV, Inc.*,
   2013 U.S. Dist. LEXIS 75032, 17-18 (N.D. Ill. May 28, 2013) .................. 2

*James v. McDonald's Corp.*,
   417 F.3d 672 (7th Cir. 2005) ...................................................................... 7

*Jenkins v. Hyundai Motor Financing Co.*,
   2008 U.S. Dist. LEXIS 43785 (S.D. Ohio 2008) ..................................... 23

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
   387 F.3d 163 (2d Cir. 2004) ....................................................................... 8

*Johnston v. Arrow Fin. Servs., LLC*,
   2006 U.S. Dist. LEXIS 70814, 2006 WL 2710663 (N.D. Ill. Sept. 15, 2006) .......................... 9

*Kindred Nursing Centers, Ltd. v. Clark*,
   137 S. Ct. 1421 (2017) ............................................................................... 6

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ................................................................................. 15

*Leff v. Deutsche Bank AG*,
   2009 U.S. Dist. LEXIS 108846 (N.D. Ill. Nov. 20, 2009) ..................... 8, 9

*Lewis v. Epic Systems Corp.*,
   823 F.3d 1147 (7th Cir. 2016) ...................................................... 1, 17, 23

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005) ................................................................ 16

*Morris v. Ernst & Young, LLP*,
   834 F.3d 975 (9th Cir. 2016) .................................................................. 17

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
   460 U.S. 1, 24-25 (1983) ..................................................................... 6, 13

*Murphy Oil USA v. NLRB*,
   808 F.3d 1013 (5th Cir. 2015) ........................................................... 17, 21

*NLRB v. Murphy Oil USA, Inc.*,
   196 L. Ed. 2d 595 ............................................................................. 17, 19

*Oil Express Nat., Inc. v. D'Alessandro*,
   173 F.R.D. 219 (N.D. Ill. 1997) ................................................................ 2

*Paragon Micro, Inc. v. Bundy*,
   22 F. Supp. 3d 880 (N.D. Ill. 2014) .................................................... 8, 13

*Patterson v. Raymours Furniture Co.*,
   659 Fed. (2d Cir. 2016) ........................................................................... 21

*Patterson v. Raymours Furniture Co.*,
   No.15-2820 (2d Cir. Sept. 2, 2016) ........................................................ 17

*Pena v. Taylor Farms Pac., Inc.*,
   2015 U.S. Dist. LEXIS 115718 (E.D. Cal. Aug. 27, 2015) ..................... 23

*Riederer v. United Healthcare Servs.*,
   No. 15-C-1292, 2016 U.S. Dist. LEXIS 183880 (E.D. Wis. Sept. 13, 2016) ..................... 16, 18

*Roman v. Northrop Grumman Corp.*,
   2016 U.S. Dist. LEXIS 173022, 7-8 (C.D. Cal. Dec. 14, 2016) .............. 18

*Rowland v. CarMax Auto Superstores California, LLC,*
 Case No. 2:16-cv-02135-VGC, U.S. District Court for Eastern District of California (Stay
 ordered on Feb. 8, 2017) ................................................................................................................ 18

*Sanchez v. CleanNet USA, Inc.,*
 78 F. Supp. 3d 747 (N.D. Ill. 2015) ............................................................................................ 12

*Sutherland v. Ernst & Young,*
 726 F.3d 290 (2nd Cir. 2013) ...................................................................................................... 17

*Tepper Realty Co. v. Mosaic Tile Co.,*
 259 F. Supp. 688 (S.D.N.Y. 1966) ............................................................................................. 13

*Walker v. Monsanto Co. Pension Plan,*
 472 F. Supp. 2d 1053 (S.D. Ill. 2006) ........................................................................................ 16

*Wheeler v. Pension Value Plan,*
 Case No. 06-cv-500-DRH, 2007 U.S. Dist. LEXIS 17608 (S.D. Ill. 2007) .............................. 16

*Zurich Am. Ins. Co. v. Watts Indus., Inc.,*
 417 F.3d 682 (7th Cir. 2005) ......................................................................................................... 6

Statutes

9 U.S.C. § 1 ........................................................................................................................................3, 6
9 U.S.C. § 2 ........................................................................................................................................6, 7
9 U.S.C. § 4 ...........................................................................................................................................6

## PRELIMINARY STATEMENT

Plaintiffs Wilhelmina Brown, Kenton Johnson and Nikia Dunbar's ("Plaintiffs'") act of filing the instant lawsuit violates arbitration provisions and class action waivers that each of them knowingly and voluntarily promised to follow. As such, this Court should dismiss this lawsuit and order Plaintiffs to proceed with individual arbitrations. Accordingly, Defendant WORLDPAC, Inc. ("WORLDPAC" or "Defendant") files the instant Motion to Dismiss and Compel Individual Arbitrations. Plaintiffs may argue that their arbitration agreements are unenforceable because they are contained within Independent Contractor Agreements Plaintiffs each signed with Partsfleet II, Inc. ("Partsfleet"). Such an argument fails because under Illinois law, WORLDPAC has the legal right to enforce Plaintiffs' arbitration agreements as a third-party beneficiary of the contracts. WORLDPAC also has the right to enforce Plaintiffs' arbitration agreements under the doctrine of equitable estoppel. This doctrine precludes Plaintiffs from bringing claims in this case that relate directly to the nature of their engagement with WORLDPAC and Partsfleet as established by the same agreement that contains the arbitration agreements.

Defendant anticipates that Plaintiffs may argue that the class action waivers contained in the arbitration agreements they signed are unlawful under the Seventh Circuit's decision in *Lewis v. Epic Systems Corp.*, 823 F.3d 1147 (7th Cir. 2016) which held that concerted action waivers violate the National Labor Relations Act ("NLRA") because they prevent concerted work-related legal claims. To the extent this Court considers such an argument in refusing to compel this case to proceed in the forum Plaintiffs agreed to pursue on an individual basis, Defendant respectfully requests that this Court stay its consideration of this Motion, and this matter in general pending the outcome of three cases (including *Lewis*) that are currently pending before the United States Supreme Court regarding the issue of the validity of class/collective action waivers in an employment-based arbitration agreement. Many courts have already granted similar motions to

1

stay under similar circumstances and even the National Labor Relations Board ("NLRB") itself is staying cases involving class action waivers pending the Supreme Court's deliberations. All applicable factors favor a stay, including that: (1) a stay would conserve the resources of this Court and the Parties; (2) WORLDPAC will be irreparably harmed absent a stay; (3) there is a strong likelihood that the *Epic* decision will be reversed; (4) a stay will not substantially injure any drivers seeking to participate in this case; and (5) the public interest favors a stay.

## PROCEDURAL HISTORY

Plaintiffs filed their putative collective and class action on September 5, 2017, alleging violations of the Fair Labor Standards Act ("FLSA"), Illinois Minimum Wage Law ("IMWL") and the Chicago Minimum Wage Ordinance ("CMWO"). *See* Complaint, Dkt. No. 1. All of these claims are encompassed within the arbitration provisions and class action waivers contained in Plaintiffs' agreements with Partsfleet.

On September 28, 2017, Defendant filed an unopposed motion for extension of time to answer or otherwise respond to Plaintiffs' Complaint through and including October 13, 2017. *See* Dkt. No. 8. On October 3, 2017, this Court granted Defendant's Motion. *See* Dkt. No. 10.

In lieu of filing an Answer, WORLDPAC files the instant Motion to Dismiss and Compel Individual Arbitrations as Plaintiffs' claims are improperly before this Court.[1] In the alternative, Defendant moves to Stay the Proceedings pending the United States Supreme Court's decision in

---

[1] Pursuant to Fed. R. Civ P. 12(a)(4), the filing of this Motion stays Defendant's deadline to file an Answer. *See Intercom Ventures, LLC v. FasTV, Inc.*, 2013 U.S. Dist. LEXIS 75032, 17-18 (N.D. Ill. May 28, 2013) (citing 5B Wright & Miller, Fed. Prac. & Proc. Civ. § 1346 (3d ed.)) ("The weight of authority is to the effect that the filing of a motion that only addresses part of a complaint suspends the time to respond to the entire complaint, not just to the claims that are the subject of the motion.") *See also Oil Express Nat., Inc. v. D'Alessandro*, 173 F.R.D. 219 (N.D. Ill. 1997) (extending time to answer counts not addressed in motion to dismiss for 10 days after the court's ruling on the counts challenged in the 12(b)(6) motion).

the three consolidated cases pending before that Court that will imminently decide the enforceability of the class action waivers Plaintiffs entered into.

## **FACTUAL HISTORY**

On May 20, 2016, Plaintiff Wilhelmina Brown entered into an Independent Contractor Agreement with a non-party, Partsfleet. *See* Declaration of David Hunter ("Hunter Dec."), attached hereto as Exhibit 1, ¶ 5. On June 5, 2015, Plaintiff Kenton Johnson entered into the same agreement with Partsfleet. *Id.,* at ¶ 6. On March 7, 2017, Plaintiff Nikia Dunbar also entered into the same agreement with Partsfleet. *Id.,* at ¶ 7.

Parstfleet is a third-party logistics and consulting company in the automotive industry, which includes arranging "engagements" involving the performance of transportation and distribution services to companies such as WORLDPAC. *See Id.*, ¶ 2. Partsfleet contracts with WORLDPAC to provide transportation services to WORLDPAC including the use of drivers such as Plaintiffs with whom Partsfleet contracts to provide such services. *See Id.*, ¶ 3. As such, Partsfleet is a "customer" or "client" of WORLDPAC. *See Id.*, ¶ 4. Plaintiffs each provided delivery services on behalf of WORLDPAC. *See Id.*, ¶ 8.

The Agreement that each of the three Plaintiffs executed contains a clear and unmistakable arbitration provision and class action waiver. *See Id.*, ¶ 9. In relevant part, the arbitration provision reads as follows:

> **A. ARBITRATION OF CLAIMS:** In the event of a dispute between the parties, the parties agree to resolve the dispute as described in this Section (hereafter "the Arbitration Provision"). The Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1, et seq., and applies to any dispute brought by either CONTRACTOR or PARTSFLEET arising out of or related to this Agreement, CONTRACTOR's relationship with PARTSFLEET (including termination of the relationship), or the service arrangement contemplated by this Agreement. . . . The terms of this Arbitration Provision shall remain in force even after the parties' contractual relationship ends. **BY AGREEING TO ARBITRATE ALL SUCH DISPUTES, THE PARTIES TO THIS AGREEMENT AGREE THAT ALL SUCH DISPUTES WILL BE RESOLVED THROUGH BINDING**

3

**ARBITRATION BEFORE AN ARBITRATOR AND NOT BY WAY OF A COURT OR JURY TRIAL.**

i.     **Claims Covered By Arbitration Provision**. Unless carved out below, claims involving the following disputes shall be subject to arbitration under this Arbitration Provision regardless of whether brought by CONTRACTOR, PARTSFLEET or any agent action on behalf of either: (1) disputes arising out of or related to this Agreement; (2) disputes arising out of or related to CONTRACTOR's relationship with PARTSFLEET, including termination of the relationship; and (3) disputes arising out of or relating to the interpretation or application of this Arbitration Provision, but not as to the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. This Arbitration Provision also applies, without limitation, to disputes regarding any city, county, state or federal wage-hour law, . . . compensation, . . . Fair Labor Standards Act . . . and state statutes, if any, addressing the same or similar subject matters . . .

ii.     *Class Action Waiver.* **CONTRACTOR AND PARTSFLEET AGREE TO BRING ANY DISPUTE IN ARBITRATION ON AN <u>INDIVIDUAL BASIS ONLY</u>, AND NOT ON A CLASS, COLLECTIVE, OR PRIVATE ATTORNEY GENERAL REPRESENTATIVE ACTION BASIS. ACCORDINGLY:**

(a) There will be no right or authority for any dispute to be brought, heard or arbitrated as a class action ("Class Action Waiver"). The Class Action Waiver shall not be severable from this Arbitration Provision in any case in which (1) the dispute is filed as a class action and (2) a civil court of competent jurisdiction finds the Class Action Waiver unenforceable. In such instances, the class action must be litigated in a civil court of competent jurisdiction.

(b) There will be no right or authority for any dispute to be brought, heard or arbitrated as a collective action ("Collective Action Waiver"). The Collective Action Waiver shall not be severable from this Arbitration Provision in any case in which (1) the dispute is filed as a class action and (2) a civil court of competent jurisdiction finds the Class Action Waiver unenforceable. In such instances, the class action must be litigated in a civil court of competent jurisdiction. . .

F.     **APPLICATION TO EXISTING CLAIMS AND CONTROVERSIES**: This Arbitration Provision is intended broadly to apply to all controversies arising out of or related to the parties' relationship or CONTRACTOR's performance of services for PARTSFLEET or its customers, as well as any existing controversy that has arisen from the parties' relationship or CONTRACTOR's performance of services for PARTSFLEET or its customers, as is permitted under Section 2 of the Federal Arbitration Act.

*See Id.*, ¶ 10. Plaintiffs signed this Agreement on March 7, 2017 (Dunbar), June 5, 2015 (Johnson), and May 20, 2016 (Brown), respectively. *See Id.*, ¶ 11.

By entering into the Agreement, Plaintiffs agreed to provide independent contractor delivery services to Partsfleet's customers, which include WORLDPAC. *See Id.*, ¶ 12. The Agreement repeatedly contemplates the role of WORLDPAC in the independent contractor relationship with Plaintiffs, and as a beneficiary of the Agreement's terms and conditions. For example, as a "Customer" under the terms of the Agreement, the document repeatedly contemplates that WORLDPAC benefit from the Agreement's terms and conditions ("Customers" is defined in the Agreement as "companies in the automotive industry," which clearly includes WORLDPAC). *See Id.*, ¶ 13. Thus, undoubtedly, the Agreement intended to confer a benefit on Customers like WORLDPAC.

For instance, in Section B of the Recitals, Plaintiffs expressly acknowledge the desire to enter into the independent contractor arrangement "for the right to accept and perform Engagements for one or more of" Partsfleet's Customers, such as WORLDPAC. *See Id.*, ¶ 14. Section One of the Agreement states that the Agreement "governs the relationship between Partsfleet and Contractor, and establishes the terms applicable to all services arranged by Partsfleet or its Customer," which is WORLDPAC. *See Id.*, ¶ 15. In Section Three, Plaintiffs each acknowledged that "the parameters of each Engagement are established by the Customer," WORLPAC. *See Id.*, ¶ 16. In the next paragraph, each Plaintiff acknowledges that the engagements under the Agreement are being performed for the Customer, WORLDPAC. *See Id.*, ¶ 17. Section Twelve of the Agreement (Section B) provides that "CONTRACTOR agrees to indemnify, protect and hold harmless PARTSFLEET including . . . PARTSFLEET'S Customers . . . from any and all claims, demands, damage, suits, losses, liabilities and causes of action arising

directly or indirectly from, as a result of or in connection with, the actions of CONTRACTOR and/or its Personnel arising from the performance of services under the Agreement." *See Id.*, ¶ 18

Thus, it is clear from the provisions referenced above, that WORLDPAC is, *inter alia*, a third party beneficiary of the Agreement, with the right to invoke the Agreement's arbitration clause. As such, WORLDPAC files the instant Motion compelling Plaintiffs to individually arbitrate the instant dispute.

## **ARGUMENT**

### I. **The Federal Arbitration Act Favors Enforcement Of Arbitration Agreements.**

The Federal Arbitration Act ("FAA") strongly encourages the enforcement of arbitration provisions. *See* 9 U.S.C. § 1 *et seq.*; *see also AT&T Mobility, LLC v. Concepcion*, 563 U.S. 222 (2011) (noting that the FAA was "designed to promote arbitration" and "embod[ies] a national policy favoring arbitration."). The FAA requires federal and state courts to place written arbitration agreements on the same footing as other contracts. 9 U.S.C. § 2; *Kindred Nursing Centers, Ltd. v. Clark*, 137 S. Ct. 1421, 1424 (2017) (citations omitted); *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629-30 (2009) (citations omitted). The FAA provides that upon establishing that a written agreement to arbitrate exists and that the arbitration agreement applies to the disputes at hand, a court must compel arbitration upon the petition of "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration[.]" 9 U.S.C. § 4; *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Generally, federal policy favors arbitration, and once an enforceable arbitration contract is shown to exist, questions as to the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983).

Although the FAA codifies the federal policy favoring enforcement of arbitration agreements, questions regarding the arbitrability of the dispute are determined by state contract law. *See* 9 U.S.C. § 2 (directing that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."); *James v. McDonald's Corp.,* 417 F.3d 672, 677 (7th Cir. 2005). When a valid contract exists, however, federal courts may look to applicable federal precedent applying the FAA to determine whether the arbitration provision applies to a non-signatory. *Gersten v. Intrinsic Techs., LLP,* 442 F. Supp. 2d 573, 578 (N.D. Ill. 2006) (collecting cases). Here, the Nineteenth Paragraph of the Agreement directs that the document should be interpreted "in accordance with the laws of the state in which CONTRACTOR performs the majority of the services covered by this Agreement," which is Illinois in the case of all three Plaintiffs. *See* Hunter Dec., ¶ 19.

Accordingly, Illinois law must direct the Court's analysis of the arbitrability of this matter. *See Arthur Andersen,* 556 U.S. at 631 (explaining that "traditional principles of state law" govern whether a contract, including an arbitration agreement, is enforceable by or against a non-party").

**II.**     **Under Illinois Law, WORLDPAC Has The Right To Enforce Plaintiffs' Arbitration Agreements As Third-Party Beneficiaries Of The Contract.**

While "arbitration is contractual by nature" and "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," the Seventh Circuit has recognized "five doctrines through which a non-signatory can be bound by arbitration agreements entered into by others: (1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference." *Zurich,* 417 F.3d at 687 (citing *Fyrnetics (H.K.) Ltd. v. Quantum Group, Inc.,* 293 F.3d 1023, 1029 (7th Cir. 2002) and *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.,* 170 F.3d 349, 352 (2d Cir. 1999)). These same five doctrines allow a non-signatory such as WORLDPAC to enforce an arbitration agreement. *See, e.g. Leff v. Deutsche Bank AG,* 2009 U.S. Dist. LEXIS

108846, at *3 (N.D. Ill. Nov. 20, 2009) ("Non-signatories to an arbitration agreement may enforce the agreement's arbitration provisions in certain circumstances under the doctrine of equitable estoppel.") (collecting cases); *see also JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177-78 (2d Cir. 2004). In this case, WORLDPAC is entitled to enforce Plaintiffs' arbitration agreements with Partsfleet under the agency and estoppel doctrines.

Under the agency/third-party beneficiary theory, a non-signatory may have the right to enforce an arbitration agreement if it is an intended third-party beneficiary to the agreement. *ChampionsWorld, LLC v. U.S. Soccer Fed'n, Inc.*, 487 F. Supp. 2d 980, 987-88 (N.D. Ill. 2007) (citing *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 529 (7th Cir. 1996)). In determining whether third-party beneficiary status should be conferred to enable a party to enforce the agreement's provisions, courts interpreting Illinois law are directed to focus on whether the parties intended the non-signatory to benefit from the agreement. *Paragon Micro, Inc. v. Bundy*, 22 F. Supp. 3d 880, 889 (N.D. Ill. 2014) (citing *ChampionsWorld, LLC,* 487 F. Supp. 2d at 987-88 and *IDS Life Ins. Co. v. SunAmerica, Inc.,* 103 F.3d 524, 529 (7th Cir. 1996)).

As discussed above in the Factual History, the Agreement repeatedly contemplates the role of WORLDPAC in the independent contractor relationship with each Plaintiff, and as a beneficiary of the Agreement's terms and conditions. As a "Customer" defined by the Agreement, WORLDPAC is referred to repeatedly throughout the document, with many of the benefits of the Agreement running to WORLDPAC as a third party beneficiary.

In sum, this Agreement is inundated with rights and benefits conferred upon WORLDPAC as agreed to by each Plaintiff and Partsfleet. Accordingly, WORLDPAC satisfies the standard of a third-party beneficiary, endowing it with the right to enforce the Agreement's arbitration provision and mandate Plaintiffs individually arbitrate their disputes.

**III.   Under Illinois Law, Equitable Estoppel Prevents Plaintiffs From Disclaiming The Binding Nature Of The Arbitration Provision.**

Even if the Court concludes that WORLDPAC is not a third-party beneficiary of Partsfleet's contracts with Plaintiffs, a non-signatory to an arbitration agreement may also compel a signatory to abide by that agreement and arbitrate a dispute on the basis of equitable estoppel. *See Leff*, 2009 U.S. Dist. LEXIS 41713, at *7 (non-signatory could compel arbitration where plaintiffs alleged that non-signatory engaged in "interdependent and concerted misconduct" with signatories); *see also Hughes Masonry Co. v. Greater Clark County School Bldg. Corp.*, 659 F.2d 836 (7th Cir. 1981) (non-signatory can compel arbitration when a signatory's claims are grounded in or intertwined with claims under the agreement that subjects the signatory to arbitration).

Pursuant to the equitable estoppel doctrine, non-signatories such as WORLDPAC can compel arbitration of a signatory "when a signatory's claims are grounded in or intertwined with the terms of the written agreement." *Affymax, Inc. v. Johnson & Johnson*, 420 F. Supp. 2d 876, 881 (N.D. Ill. 2006); *see Zurich*, 417 F.3d at 688. In *Affymax*, this Court concluded that equitable estoppel applies "when the signatory relies on the terms of the written agreement in asserting its claims against the non-signatory." *Affymax*, 420 F. Supp. 2d at 882 ("A nonsignatory party is estopped from avoiding arbitration if it knowingly seeks the benefits of the contract containing the arbitration clause"). Thus, "[w]hen each of a signatory's claims against a non-signatory . . . 'presumes the existence' of the written agreement, the signatory's claims arise out of and relate directly to the written agreement and arbitration is appropriate." *Leff*, 2009 U.S. Dist. LEXIS 41713, at *13-14.[2]

---

[2] Citing *Hoffman v. Deloitte & Touche LLP*, 143 F. Supp. 995, 1004-05 (N.D. Ill. 2001) (citations omitted); *see also Holden v. Deloitte & Touche LLP*, 390 F. Supp. 2d 752, 764-65 (N.D. Ill. 2005); *Affymax*, 420 F. Supp. 2d at 881-82; *Johnston v. Arrow Fin. Servs., LLC*, 2006 U.S. Dist. LEXIS 70814, 2006 WL 2710663, at *5 (N.D. Ill. Sept. 15, 2006).

Here, Plaintiffs' claims arise under and relate directly to the subject matter of the Agreements. Plaintiffs allege in their Complaint that they were improperly classified as independent contractors and, accordingly, are owed additional compensation under federal and Illinois law. This subject matter is directly addressed at several points throughout the Agreement. For example, Section Seven of the Agreement outlines the payment structure and makes reference to Appendix A. *See* Hunter Dec., ¶ 20. Likewise, Section Eight of the Agreement outlines the required methods required by Plaintiffs to invoice for their services. *Id.*, ¶ 21. Most importantly Section Nine of the Agreement governs "Payment Disputes." *Id.*, ¶ 22. In the case of an alleged failure to remit payments, Plaintiffs agreed to "seek proper payment by any legal means contemplated by this Agreement," which is through arbitration. *Id.*, ¶ 23. Furthermore, the arbitration provision specifically contemplates that should such a dispute arise, the dispute would be subject to arbitration as the scope of the provision specifically encompasses "any dispute brought by either CONTRACTOR or PARTSFLEET arising out of or related to this Agreement." *Id.*, ¶ 24. Thus, Plaintiffs' contention that they were not properly compensated because they were improperly classified as independent contractors, and therefore, unlawfully denied overtime, could not be more intimately intertwined with the subject matter of the Agreement.

The basis of Plaintiffs' lawsuit is their contention that the relationship between them and WORLDPAC was an "employment" relationship. This claim is inherently based on the nature of the relationship established by the contract that contains the arbitration agreement. It is the Agreement that outlines the rights and obligations of the Parties, including the "Customer," WORLDPAC. The alleged employment relationship between Plaintiffs and WORLDPAC could not have arisen but for the existence of the contracts. Plaintiffs do not allege that any actions by WORLDPAC independent of the jobs established by the contract with Partsfleet are the basis for

their claims that WORLDPAC employed them. Accordingly, the alleged misclassification of Plaintiffs as independent contractors by WORLDPAC is inextricably intertwined with the document that created and defined the independent contractor relationship—Plaintiffs' contracts with Partsfleet. Under such circumstances, Plaintiffs are subject to the arbitration provisions. *See, e.g. Paragon*, 22 F. Supp. 3d at 889-90; *Hoffman*, 143 F. Supp. 2d at 1005 (the doctrine of equitable estoppel can allow a non-signatory to compel arbitration "when the signatory must rely on the terms of the written agreement in asserting its claim against a non-signatory").

Indeed, Plaintiffs' agreements with Partsfleet are filled with discussion of the very issues that will be the subject of whether Plaintiffs' relationship with WORLDPAC was one of employer/employee or not, including but not limited to:

1) Whether Plaintiffs' businesses are independent business that independently contracted with Partsfleet (Section 2);

2) Whether Plaintiffs use their own equipment or the equipment of their alleged "employer" in fulfilling their contractual duties (Section 4);

3) Whether Plaintiffs supply their own personnel in fulfilling their contractual obligations and the degree of control, if any, exercised by the alleged "employer" (Section 5);

4) Whether the relationship between Plaintiffs and their alleged "employer" is, in fact, a co-equal relationship between respective businesses or whether the nature of the relationship is more of the nature of an "employment" relationship (Section 6);

5) Whether the manner in which Plaintiffs are paid operates as an employer/employee relationship or as a legitimate invoicing system between co-equal businesses (Sections 7 and 8);

6) Whether Plaintiffs maintain the necessary insurance policies to operate as independent businesses (Section 10);

7) Whether Plaintiffs maintain the necessary licenses and other legal authorizations to operate as independent businesses (Section 13);

8) Whether Plaintiffs maintain the necessary documentation to operate as independent businesses (Section 14); and

9) Whether the termination provisions are akin to the terms of "employment" such as employment at will, or whether the terms approximate bona fide contract termination terms between co-equal businesses (Section 17);

Accordingly, Plaintiffs presume the existence of the Agreement with Partsfleet to demonstrate the facts they must rely upon to establish an employment relationship with WORLDPAC. Such a presumption estops Plaintiffs from disavowing the arbitration. *See Paragon*, 22 F. Supp. 3d at 889-90; *Hoffman*, 143 F. Supp. 2d at 1004-05; *see also Hughes Masonry*, 659 F.2d at 838-39. Plaintiffs cannot escape the plain fact that they would not be before this Court asserting their claims under the FLSA, IMWL and CMWO without the contractual relationship established between themselves and Partsfleet in the very same agreements that contain the arbitration provisions.

Indeed, it was entirely foreseeable to Plaintiffs that if they had disputes about the "Fair Labor Standards Act . . . and state statutes" as expressly covered in the arbitration agreement (including with WORLDPAC), those disputes would be subject to arbitration. This factor also favors applicability of the equitable estoppel doctrine. *See, e.g., Achey v. Brno Harris Bank, N.A.*, 64 F. Supp. 3d 1170, 1173 (N.D. Ill. 2014). As Partsfleet's "Customer," WORLDPAC is both defined and repeatedly referred to in the Agreement. As such, Plaintiffs cannot deny the expected involvement of Partsfleet's "Customer" when they entered the Agreement and acknowledged their status as an independent contractor. More so, Plaintiffs reaped the benefits of the Agreement while providing delivery services on behalf of WORLDPAC. It would therefore be unjust if Plaintiffs were permitted to disclaim the rights of WORLDPAC as conferred by the Agreement solely to avoid the arbitration provision Plaintiffs agreed to follow. This is especially so given that Plaintiffs now seek to disavow their acknowledged status as independent contractors and contend to be employees of WORLDPAC. Thus, Plaintiffs' claims "arise out of" their contractual engagements with Partsfleet. *See, e.g., Sanchez v. CleanNet USA, Inc.*, 78 F. Supp. 3d 747, 758 (N.D. Ill. 2015)

12

(holding equitable estoppel applied to prohibit the plaintiff from avoiding arbitration because his claims against the defendant were "inextricably intertwined" with the operative agreement").

In short, Plaintiffs cannot have it both ways. If they are indeed employees as they claim, they must rely on the control and other indices of employment status created by the contract. Once they rely upon the relationship created by the contract, they are subject to the arbitration provisions contained therein. *See Paragon*, 22 F. Supp. 3d at 889-90 (holding that the plaintiff "cannot have it both ways. [It] cannot rely on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage"); *Hughes Masonry,* 659 F.2d at 839 (quoting *Tepper Realty Co. v. Mosaic Tile Co.,* 259 F. Supp. 688, 692 (S.D.N.Y. 1966)).

## IV.   Plaintiffs Agreed To Arbitrate.

### A.   The Parties Entered a Valid Agreement to Arbitrate.

Plaintiffs, as parties to the Agreements, expressly promised to arbitrate disputes arising out of the Agreements, including the claims involved here. The courts deciding arbitrability under the FAA consider the following factors: "(1) the existence of a valid written arbitration agreement; (2) that the dispute in question falls within the scope of that agreement; and (3) that the plaintiff refused to arbitrate." *Zurich*, 466 F.3d at 581. The party resisting arbitration bears the burden of proving that the arbitration agreement is invalid or does not encompass the claims at issue. *Battle v. Nissan Motor Acceptance Corp.*, 2006 U.S. Dist. LEXIS 37916, at *9 (E.D. Wis. Mar. 9, 2006) (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24).

Here, Plaintiffs can proffer no such evidence of unconscionability to undermine enforcement of their agreement to arbitrate. Accordingly, the underlying Motion must be granted as Plaintiffs cannot dispute that the Agreements are valid and binding.

### B. __The Dispute at Issue Falls Within the Scope of the Agreement.__

Plaintiffs' allegations in the Complaint unmistakably fall within the scope of the Agreement's arbitration provision. Among other things, Plaintiffs challenge their classification as independent contractors and their compensation – terms and conditions clearly agreed upon and defined by the Agreements. The scope of the arbitration provision encompasses such disputes providing specifically that the FLSA and state wage and hour law claims such as those alleged in this lawsuit are "claims covered by arbitration provision."

### C. __Plaintiffs Refused to Arbitrate.__

On October 9, 2017, counsel for Defendant reached out to counsel for Plaintiffs to inform them that each Plaintiffs signed agreements containing arbitration provisions and class action waivers. *See* email exchange attached as Exhibit 4. Counsel for Defendant informed counsel for Plaintiff that Defendant intended to move to dismiss and compel individual arbitrations, or, in the alternative, to stay the case pending the outcome of the Supreme Court's resolution of the class action waiver issue. *See Id.* Counsel for Defendant requested Plaintiffs' consent to dismiss this case and proceed with individual arbitrations without the need for motion practice. *See Id.* On October 12, 2017, counsel for Plaintiffs responded, stating they are unwilling to voluntarily dismiss and proceed with individual arbitrations. *See Id.* Plaintiffs have therefore refused to arbitrate.

Accordingly, this matter is improperly before this Court, rightfully belongs in arbitration, and therefore, WORLDPAC respectfully requests the Court dismiss this case pending individual arbitrations of the claims at issue here.

## V. **If This Court Does Not Dismiss The Case And Compel Individual Arbitrations, This Matter Should Be Stayed.**

### A. **The Supreme Court has Granted Writs of Certiorari to Resolve a Circuit Split as to the Validity of Class Action Waivers.**

WORLDPAC anticipates that in order to satisfy their burden of proving that the arbitration agreements are invalid, Plaintiffs will respond to this Motion by arguing that the Seventh Circuit Court of Appeals has held that class action waivers are invalid because they run afoul of the NLRA's Section 7 which prohibits employers from restraining employees from engaging in protected concerted activity. While it is true that the Seventh Circuit has issued this decision, the Second, Fifth and Eighth Circuits have held otherwise. As a consequence of that circuit split, there are three consolidated cases before the United States Supreme Court that will resolve the issue of whether class action waivers are enforceable in an employment-based arbitration agreement. The issue before the Court in those consolidated cases is "Whether an agreement that requires an employer and an employee to resolve employment-related disputes through individual arbitration, and waive class and collective proceedings, is enforceable under the Federal Arbitration Act, notwithstanding the provisions of the National Labor Relations Act." Because the answer to that question is dispositive of whether Plaintiffs must individually arbitrate their claims and whether they can pursue collective relief, this Court should stay this case pending resolution of this matter by the Supreme Court if the Court does not compel individual arbitrations.

### B. **This Court has the Authority to Stay a Case Pending the Outcome of the Supreme Court's Decision.**

This Court has the inherent power "to stay proceedings in one suit until the decision of another" in furtherance of the fair and efficient administration of justice. *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936). This Court must weigh the competing interests which will be affected by granting or refusing to grant a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

These competing interests include "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law." *Lockyer v. Mirant Corp.,* 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX,* 300 F.2d at 268). Where a Plaintiff seeks money damages, a delay in the case and in recovery of such damages, if any, is not a strong showing of hardship or inequity. *See CMAX, Inc.*, 300 F.2d at 268-69.

Indeed, it is customary for trial courts to stay cases pending the resolution of a petition for *certiorari* on a dispositive issue in the case. *See, e.g.*, *Riederer v. United Healthcare Servs.*, No. 15-C-1292, 2016 U.S. Dist. LEXIS 183880, at *3 (E.D. Wis. Sept. 13, 2016); *Walker v. Monsanto Co. Pension Plan,* 472 F. Supp. 2d 1053, 1054-55 (S.D. Ill. 2006) (entering a stay pending resolution of a petition for a writ of certiorari from the Supreme Court of the United States in a case likely to be dispositive as to the case in which the stay was sought); *Wheeler v. Pension Value Plan*, Case No. 06-cv-500-DRH, 2007 U.S. Dist. LEXIS 17608, at *5 (S.D. Ill. 2007) (noting stay of proceedings pending disposition of an ultimately unsuccessful petition for writ of certiorari by the United States Supreme Court). In these cases, the courts entering stay orders did not even know whether the Supreme Court would accept the case, much less when briefing would occur. Here, the case for a stay is all the more compelling given that the Supreme Court has already accepted *certiorari* and already heard argument on the case on October 2, 2017.

### C. **The Supreme Court is Poised to Decide the Central Procedural Issue in this Case – Whether Plaintiffs can Pursue a Collective and Class Action Notwithstanding that They Signed Collective and Class Action Waivers.**

As noted above, the circuit courts are split on the issue of whether class and collective action waivers violate the NLRA. Six circuit courts have ruled on the issue: four have held that

collective or class action waivers are lawful, two have come to a different conclusion.[3]  Now the Supreme Court is going to decide this issue.

On August 22, 2016, the Ninth Circuit issued its decision in *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), holding that concerted action waivers violated the NLRA because they prevented concerted work-related legal claims.  Previously, on May 26, 2016, the Seventh Circuit issued its decision in *Lewis v. Epic Systems Corp.*, 823 F.3d 1147 (7th Cir. 2016), reaching the same conclusion.   In contrast, on October 26, 2015, the Fifth Circuit issued its decision in *Murphy Oil USA, Inc.*, 808 F.3d 1013 (5th Cir. 2015) (en banc review denied May 13, 2016).  Consistent with its prior decision in *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344 (5th Cir. 2013), it held that a class or collective action waiver does not violate the NLRA.

Parties in each of the three cases petitioned the Supreme Court for review, and on January 13, 2017, the Supreme Court granted certiorari and consolidated the three cases.  *See Ernst & Young LLP v. Morris*, 196 L. Ed. 2d 595; *NLRB v. Murphy Oil USA, Inc.*, 196 L. Ed. 2d 595; *Epic Sys. Corp. v. Lewis*, 196 L. Ed. 2d 595.  The question confronting the Court in the three cases is whether an agreement that requires an employer and an employee to resolve employment-related disputes through individual arbitration, and waive class and collective proceedings, is enforceable under the FAA, notwithstanding the provisions of the NLRA.   That is the same question confronting the Court in this matter if the matter is not dismissed and compelled to individual

---

[3] The Second, Fifth and Eighth Circuits have held that collective or class action waivers are valid under the Federal Arbitration Act notwithstanding the National Labor Relations Board's decision regarding protected concerted activity.  *See Sutherland v. Ernst & Young*, 726 F.3d 290 (2nd Cir. 2013); *Patterson v. Raymours Furniture Co.*, No. 15-2820 (2d Cir. Sept. 2, 2016); *Murphy Oil USA v. NLRB*, 808 F.3d 1013 (5th Cir. 2015) (*en banc* review denied May 13, 2016); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050 (8th Cir. 1013); *Cellular Sales of Missouri, LLC v. NLRB*, No. 15-1620 (8th Cir. June 2, 2016).  The Seventh Circuit and Ninth Circuit have taken a contrary view and have held that such waivers violate the NLRA.  *See Lewis v. Epic Systems Corp.*, No. 15-2997 (7th  Cir. May 26, 2016); *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016).

arbitrations. Because the Supreme Court's resolution of this issue will be binding on this Court, this matter should be stayed pending a decision from the Supreme Court, especially in light of the prejudice caused to WORLDPAC by proceeding with this case as a class action if the Seventh Circuit's decision in *Lewis* is reversed.

### D. Courts have Granted Stays Pending the Supreme Court's Decision.

At least four courts (three of which are in the two Circuits that have held the class action waivers violate the NLRA) have granted stays pending the Supreme Court's decision regarding class action waivers in arbitration agreements. *Rowland v. CarMax Auto Superstores California, LLC*, Case No. 2:16-cv-02135-VGC, U.S. District Court for Eastern District of California (Stay ordered on Feb. 8, 2017); *Heller et al v. CVS Pharmacy, Inc. et al*, Case No. 3:16-cv-01012, U.S. District Court for the Middle District of Florida order (Stay ordered on Feb. 8, 2017); *Roman v. Northrop Grumman Corp.*, 2016 U.S. Dist. LEXIS 173022, 7-8 (C.D. Cal. Dec. 14, 2016) (holding that a stay is "wholly appropriate" even before the Supreme Court granted the motion for certiorari because the stay "would serve the orderly course of justice [as] measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."); *Riederer v. United Healthcare Servs.*, 2016 U.S. Dist. LEXIS 183880 (E.D. Wis. Sept. 13, 2016) (granting motion for stay even before the Supreme Court granted the motion for certiorari because there is "clearly a reasonable chance that the Supreme Court would grant cert and find in favor of *Epic Systems* [reversing the Seventh Circuit], which would then warrant a revisiting of this court's decision").

### E. Even the NLRB is Staying Cases Involving Class Action Waivers Pending a Decision from the Supreme Court.

In a memo from the Office of General Counsel directed to all NLRB Regional Directors, the General Counsel's office recognized: "The General Counsel is committed to judicial economy

and avoiding undue litigation. In light of the grant of certiorari and the fact that this significant issue is now before the Supreme Court, the General Counsel has re-evaluated his prior position of proceeding on these matters." *See* January 26, 2017 Memo from the NLRB Office of General Counsel to NLRB Regional Directors, Officers-in-Charge and Resident Officers, Exhibit 2. The memo went on to advise the Regional Directors that in cases involving class action waivers, such as this one, the Board should enter into conditional settlement agreements in lieu of trying these cases. *Id.* Pursuant to these conditional settlement agreements, the Board would agree to settle the matters under terms agreed to by the Parties, but the settlement would only be enforced if the NLRB's position prevailed in *Murphy Oil* and the other cases pending before the Supreme Court. If the NLRB position lost, then the NLRB charges would be dismissed. The NLRB itself is putting cases on hold pending a decision from the Supreme Court, and this Court should do the same.

The Board's January 26, 2017 memo demonstrates that even the Board itself is no longer enforcing the position adopted by the Seventh Circuit in *Epic*. Indeed, the Board is "holding such cases in abeyance" and is not opposing motions to stay pending the Supreme Court's resolution of the issue. *Id.* If the Agency whose opinion is the basis for the Seventh Circuit's decision in *Epic* has stayed cases, it is certainly appropriate for this Court to do the same.

**F.  Staying this Case will Conserve the Resources of the Court, WORLDPAC, and Plaintiffs.**

It is undisputed that Plaintiffs filed this case as a putative collective and class action and that Plaintiffs are determined to litigate this case as both a class and collective action. If the Supreme Court upholds the validity of class and collective action waivers, then any time and energy that the Parties spend litigating this case as a putative class and collective action, including the appropriateness of class certification, or taking collective discovery, will have been wasted. To prevent such a waste of resources of the Court and the Parties, if the Court does not dismiss

this case and compel individual arbitrations, then the Court should stay this action pending a decision from the Supreme Court.

### G. WORLDPAC will be Irreparably Harmed Absent a Stay.

WORLDPAC will be irreparably injured absent a stay. If this case proceeds to collective or class action certification before the Supreme Court resolves the pending circuit split, all of the putative members of the class and collective as defined by Plaintiffs may receive notice of a collective and class action they may ultimately be unable to participate in. Someone will have to explain to the putative class members why they are receiving notice of a collective and class action that they waived their right to participate in. These communications would also be particularly confusing given that WORLDPAC and Partsfleet have every intent to enforce the class and collective action waivers executed by the putative class members prospectively.

The Eastern District of Wisconsin's decision in *Andrews v. Chevy Chase Bank, FSB*, 474 F. Supp. 2d 1006, 1010 (E.D. Wis. 2007) is instructive here. In that case, the defendant contended that it would be irreparably injured absent a stay because it would have to send class notice, provide discovery and respond to claims even though the class action might not proceed. The plaintiffs argued that they would be irreparably harmed by a stay because the three-year statute of limitations would run on some class members before they were made aware of their right to participate. Weighing these interests, the court held that the need to clarify whether a court could certify a class whose members have a right to rescind tipped the balance in favor of the defendant. *Id.* Here, Plaintiffs have already tolled the statute of limitations for their IMWL and CMWO claims by filing their Complaint so there is no prejudice to the putative class members by staying the case.

H. **There is a Strong Likelihood that the Employers will be Successful at the Supreme Court.**

There is a strong showing of likely success on the merits on the issue of enforceability of the collective and class action waiver. Indeed, the mere fact that the Supreme Court has accepted *certiorari*, and the existence of a bona fide circuit split alone mean there is a substantial likelihood of success. The Supreme Court hears around 80 cases a year, out of around 7,000 requests. *See* *http://www.civilrights.org/judiciary/courts/supreme.html*. Three Courts of Appeal have already held that collective or class action waivers are valid under the FAA notwithstanding the NLRB's decision regarding protected concerted activity. *See Patterson v. Raymours Furniture Co.*, 659 Fed. App'x 40 (2d Cir. 2016); *Murphy Oil USA v. NLRB*, 808 F.3d 1013 (5th Cir. 2015) (en banc review denied May 13, 2016); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050 (8th Cir. 1013); *Cellular Sales of Missouri, LLC v. NLRB*, No. 15-1620 (8th Cir. June 2, 2016). If there was a not a substantial likelihood that either side could succeed on the merits, the circuits would not be in disagreement over the issue, and the Supreme Court would not have devoted its extremely limited resources to considering this issue.

This substantial likelihood of success on the merits is bolstered considerably by the fact that the *Epic* decision was based on deference to the NLRB's position, which the Government itself has disavowed. Therefore, the entire legal basis for the decisions (such as *Epic*) holding the waiver unenforceable has been rejected by the United States government. On June 16, 2017, the Department of Justice filed an amicus brief with the Supreme Court in favor of the employers' position that class and collective action waivers do not violate Section 7 of the NLRA. *See* DOJ Amicus Brief, attached as Exhibit 3. At the oral argument which occurred on October 2, 2017 at the Supreme Court, Jeffrey Wall, the Principal Deputy Solicitor General of the Department of Justice appeared as amicus curiae supporting the Petitioners' (the employers) position. There can

21

be little doubt that the Government's position change will have a significant effect on the Court given that the NLRB's position was the basis of the *Epic* and *Ernst & Young* decisions.

## I. A Stay will not Substantially Injure any Drivers Seeking to Proceed with Claims.

Issuance of a stay will not substantially injure other parties interested in the proceeding, namely other drivers that may wish to bring claims. Critically, Plaintiffs have not shown that there are any other drivers alleging they have been misclassified as independent contractors waiting on the sidelines. If there were any such people, there is absolutely nothing precluding them from bringing their claims consistent with the arbitration agreements that they signed (i.e. individually). There is also no prejudice in delay because Plaintiffs and all putative class members have already tolled their statutes of limitation for their IMWL and CMWO claims. Therefore, only the statutes of limitations for putative collective members under the FLSA are running, and the drivers can recover the same damages under the IMWL and CMWO as they can under the FLSA.

Indeed, staying consideration of whether this case can proceed as a collective action avoids causing potential injury and prejudice to the drivers. If the Supreme Court determines that the collective action waiver is lawful and valid, and drivers have filed consents to participate in this case, it is that scenario which would cause the greatest injury to these third parties. In such a scenario, the Court and Plaintiffs' counsel would have to inform each of them that their efforts to participate in this case were for naught and they must start over individually if they wish to proceed. In this likely scenario, it is Plaintiffs' counsel that will have to admit they knew this result was a likely possibility, but nevertheless proceeded to inform them of their "right" to participate in a collective and class action.

## J. The Public Interest Favors a Stay.

Finally, the public interest lies with a stay because the public interest favors avoiding the potential confusion arising from the issuance of a class notice that may have to be rescinded should

the Supreme Court find the class action waiver lawful and enforceable. In the context of interlocutory appeals of class certification decisions, courts have regularly held that unnecessary dissemination of class notice pending an appeal harms the public interest by creating confusion amongst the public and the putative class members. *See, e.g. Pena v. Taylor Farms Pac., Inc.*, 2015 U.S. Dist. LEXIS 115718, at *15 (E.D. Cal. Aug. 27, 2015); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 286 F.R.D. 88, 94 (D.D.C. 2012); *Jenkins v. Hyundai Motor Financing Co.*, 2008 U.S. Dist. LEXIS 43785, at *5 (S.D. Ohio 2008) (recognizing the public interest in minimizing potential confusion that could result from potentially erroneous notices, and staying notice to class); *Beattie v. CenturyTel Inc.*, 2006 U.S. Dist. LEXIS 41200, *8 (same); *see also* Manual for Complex Litigation (Fourth) § 21.28 (2004) (the district court "should ordinarily stay the dissemination of class notice to avoid the confusion and substantial expense of renotification that may result from appellate reversal or modification after notice dissemination.") Here, just as in the case of an interlocutory appeal of a grant of class certification, the possibility that the class claim cannot ultimately proceed counsels for a stay of proceedings in this case on a classwide basis. Like these courts have decided, the delay caused by waiting to see if the class claim can proceed is outweighed by this public interest.

## CONCLUSION

For the reasons set forth herein, WORLDPAC respectfully requests that the Court compel Plaintiffs to arbitrate their claims individually as each of them agreed to in their contracts with Partsfleet. Alternatively, should the Court conclude that because of the *Epic* decision, the class and collective action waivers contained in Plaintiffs' arbitration agreements are, for the moment, unenforceable, WORLDPAC respectfully requests this Court stay its consideration of this Motion

and this case in general pending the outcome of the Supreme Court's decision regarding the enforceability of class and collective action waivers in employment-based arbitration agreements.

Dated: October 13, 2017               Respectfully submitted,

**WORLDPAC, INC.**

By:    Kirsten A. Milton
             One of Its Attorneys

Kirsten A. Milton
Kirsten.Milton@jacksonlewis.com
JACKSON LEWIS P.C.
150 North Michigan Avenue
Suite 2500
Chicago, Illinois 60601
Telephone: (312) 787-4949
Facsimile: (312) 787-4995

Eric R. Magnus
MagnusE@jacksonlewis.com
JACKSON LEWIS P.C.
1155 Peachtree Street, NE
Suite 1000
Atlanta, GA 30309
Telephone: (404) 525-8200
Facsimile: (404) 525-1173

## CERTIFICATE OF SERVICE

I, Kirsten A. Milton, an attorney, hereby certify that on October 13, 2017, I electronically filed a copy of the foregoing **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AND COMPEL INDIVIDUAL ARBITATIONS OR, ALTERNATIVELY, TO STAY THE PROCEEDINGS** to be filed with the Court by electronic filing protocols, and that same will therefore be electronically served upon all attorneys of record registered with the Court's ECF/CM system.

/s/ Kirsten A. Milton
Kirsten A. Milton