# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILHELMINA BROWN, KENTON JOHNSON and NIKIA DUNBAR, on behalf of themselves and others similarly situated<br><br>PLAINTIFFS,<br><br>v.<br><br>WORLDPAC, INC.,<br><br>DEFENDANT. | Case: 1:17-cv-06396 |

## DECLARATION OF DAVID HUNTER

DAVID HUNTER, of full age, hereby declares, pursuant to 28 U.S.C. § 1746, as follows:

1. I am the Chief Financial Officer of Fleetgistics, Inc. Fleetgistics, Inc. owns Partsfleet II, Inc. ("Partsfleet"). As such, I am fully familiar with the facts set forth herein.

2. Parstfleet is a third-party logistics and consulting company in the automotive industry, which includes arranging "engagements" involving the performance of transportation and distribution services to companies such as WORLDPAC.

3. Partsfleet contracts with WORLDPAC to provide transportation services to WORLDPAC including the use of drivers such as Plaintiffs with whom Partsfleet contracts to provide such services.

4. Partsfleet enters into agreements with independent owner-operators, such as Plaintiffs Wilhelmina Brown, Kenton Johnson and Nikia Dunbar, to provide independent delivery services to WORLDPAC. As such, WORLDPAC is a customer or client of Partsfleet.

5. On May 20, 2016, Plaintiff Wilhelmina Brown entered into an Independent Contractor Agreement with Partsfleet. A true and correct copy of that Agreement is attached to this Declaration as Exhibit A.

6. On June 5, 2015, Plaintiff Kenton Johnson entered into the same agreement with Partsfleet. A true and correct copy of that Agreement is attached to this Declaration as Exhibit B.

7. On March 7, 2017, Plaintiff Nikia Dunbar entered into the same agreement with Partsfleet. A true and correct copy of that Agreement is attached to this Declaration as Exhibit C.

8. Plaintiffs each provided delivery services on behalf of WORLDPAC.

9. The Agreement that each of the three Plaintiffs executed contains a clear and unmistakable arbitration provision and class action waiver.

10. In relevant part, the arbitration provision reads as follows:

A. **ARBITRATION OF CLAIMS:** In the event of a dispute between the parties, the parties agree to resolve the dispute as described in this Section (hereafter "the Arbitration Provision"). The Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1, et seq., and applies to any dispute brought by either CONTRACTOR or PARTSFLEET arising out of or related to this Agreement, CONTRACTOR's relationship with PARTSFLEET (including termination of the relationship), or the service arrangement contemplated by this Agreement. . . . The terms of this Arbitration Provision shall remain in force even after the parties' contractual relationship ends. **BY AGREEING TO ARBITRATE ALL SUCH DISPUTES, THE PARTIES TO THIS AGREEMENT AGREE THAT ALL SUCH DISPUTES WILL BE RESOLVED THROUGH BINDING ARBITRATION BEFORE AN ARBITRATOR AND NOT BY WAY OF A COURT OR JURY TRIAL.**

  i. ***Claims Covered By Arbitration Provision.*** Unless carved out below, claims involving the following disputes shall be subject to arbitration under this Arbitration Provision regardless of whether brought by CONTRACTOR, PARTSFLEET or any agent action on behalf of either: (1) disputes arising out of or related to this Agreement; (2) disputes arising out of or related to CONTRACTOR's relationship with PARTSFLEET, including termination of the relationship; and (3) disputes arising out of or relating to the interpretation or application of this Arbitration Provision, but not as to the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. This Arbitration Provision also applies, without limitation, to disputes regarding any city, county, state or federal wage-hour law, . . . compensation, . . . Fair Labor Standards Act . . . and state statutes, if any, addressing the same or similar subject matters . . .

  ii. ***Class Action Waiver.*** **CONTRACTOR AND PARTSFLEET AGREE TO BRING ANY DISPUTE IN ARBITRATION ON AN <u>INDIVIDUAL BASIS</u>**

2

<u>ONLY</u>, AND NOT ON A CLASS, COLLECTIVE, OR PRIVATE ATTORNEY GENERAL REPRESENTATIVE ACTION BASIS. ACCORDINGLY:

(a) There will be no right or authority for any dispute to be brought, heard or arbitrated as a class action ("Class Action Waiver"). The Class Action Waiver shall not be severable from this Arbitration Provision in any case in which (1) the dispute is filed as a class action and (2) a civil court of competent jurisdiction finds the Class Action Waiver unenforceable. In such instances, the class action must be litigated in a civil court of competent jurisdiction.

(b) There will be no right or authority for any dispute to be brought, heard or arbitrated as a collective action ("Collective Action Waiver"). The Collective Action Waiver shall not be severable from this Arbitration Provision in any case in which (1) the dispute is filed as a class action and (2) a civil court of competent jurisdiction finds the Class Action Waiver unenforceable. In such instances, the class action must be litigated in a civil court of competent jurisdiction. . .

F. **APPLICATION TO EXISTING CLAIMS AND CONTROVERSIES**: This Arbitration Provision is intended broadly to apply to all controversies arising out of or related to the parties' relationship or CONTRACTOR's performance of services for PARTSFLEET or its customers, as well as any existing controversy that has arisen from the parties' relationship or CONTRACTOR's performance of services for PARTSFLEET or its customers, as is permitted under Section 2 of the Federal Arbitration Act.

11. Plaintiffs signed this Agreement on March 7, 2017 (Dunbar), June 5, 2015 (Johnson), and May 20, 2016 (Brown), respectively.

12. By entering into the Agreement, Plaintiffs agreed to provide independent contractor delivery services to Partsfleet's customers, which include WORLDPAC.

13. As a "Customer" under the terms of the Agreement, the document repeatedly contemplates that WORLDPAC benefit from the Agreement's terms and conditions ("Customers" is defined in the Agreement as "companies in the automotive industry," which clearly includes WORLDPAC).

3

14. In Section B of the Recitals, Plaintiffs expressly acknowledge the desire to enter into the independent contractor arrangement "for the right to accept and perform Engagements for one or more of" Partsfleet's Customers, such as WORLDPAC.

15. Section One of the Agreement states that the Agreement "governs the relationship between Partsfleet and Contractor, and establishes the terms applicable to all services arranged by Partsfleet or its Customer," which is WORLDPAC.

16. In Section Three, Plaintiffs each acknowledged that "the parameters of each Engagement are established by the Customer," WORLPAC.

17. In the next paragraph, each Plaintiff acknowledges that the engagements under the Agreement are being performed for the Customer, WORLDPAC.

18. Section Twelve of the Agreement (Section B) provides that "CONTRACTOR agrees to indemnify, protect and hold harmless PARTSFLEET including . . . PARTSFLEET'S Customers . . . from any and all claims, demands, damage, suits, losses, liabilities and causes of action arising directly or indirectly from, as a result of or in connection with, the actions of CONTRACTOR and/or its Personnel arising from the performance of services under the Agreement."

19. The Nineteenth Paragraph of the Agreement directs that the document should be interpreted "in accordance with the laws of the state in which CONTRACTOR performs the majority of the services covered by this Agreement," which is Illinois in the case of all three Plaintiffs.

20. Section Seven of the Agreement outlines the payment structure and makes reference to Appendix A to the Agreement.

4

21. Section Eight of the Agreement outlines the required methods required by Plaintiffs to invoice for their services.

22. Section Nine of the Agreement governs "Payment Disputes."

23. In the case of an alleged failure to remit payments, Plaintiffs agreed to "seek proper payment by any legal means contemplated by this Agreement," which is through arbitration.

24. The arbitration provision specifically contemplates that should such a dispute arise, the dispute would be subject to arbitration as the scope of the provision specifically encompasses "any dispute brought by either CONTRACTOR or PARTSFLEET arising out of or related to this Agreement."

I declare under penalty of perjury that the foregoing is true and correct.

_____
DAVID HUNTER

4836-9838-2929, v. 1