# EXHIBIT A

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

# INDEPENDENT CONTRACTOR AGREEMENT

Partsfleet II, Inc. ("PARTSFLEET" or "COMPANY") and Wilhelmina Brown ("CONTRACTOR") enter into this Independent Contractor Agreement ("Agreement") on 5/20/2016 , 20___ (the "Effective Date").

## RECITALS

**A.** PARTSFLEET is in the business of providing third party logistics and consulting services for companies in the automotive industry ("Customers"), including arranging "Engagements" involving the performance of transportation and distribution services that PARTSFLEET contracts to independent service providers and agents like CONTRACTOR.

**B.** CONTRACTOR is a fully licensed motor carrier authorized to operate as an independent business in the state(s) in which CONTRACTOR performs services. CONTRACTOR is fully capable of performing transportation and related services, including providing the necessary equipment and personnel to perform the services in compliance with all applicable laws. CONTRACTOR desires to enter into this Agreement for the right to accept and perform Engagements for one or more of the Customers for which PARTSFLEET provides transportation logistics.

In consideration of the above assertions and the mutual promises below, and for other good and valuable consideration, PARTSFLEET and CONTRACTOR (collectively "the parties") agree as follows:

## 1. PURPOSE OF AGREEMENT

**A.** This Agreement governs the relationship between PARTSFLEET and CONTRACTOR, and establishes the terms applicable to all services arranged by PARTSFLEET or its Customer and performed by CONTRACTOR, including, but not limited to the "Contracted Services" (defined below) involved in any Engagement accepted by CONTRACTOR. Unless otherwise agreed in writing, nothing in this Agreement shall guarantee CONTRACTOR any particular volume of business for any particular time period.

**B.** CONTRACTOR shall have no obligation to accept or perform any Engagement offered by PARTSFLEET or its Customer. Once accepted, however, CONTRACTOR shall be contractually bound to complete the Engagement in accordance with the terms of the service specified by the Customer ("Customer Specifications") and the terms of this Agreement.

## 2. CONTRACTOR'S BUSINESS

**A.** CONTRACTOR represents that it is an independently established enterprise in the business of providing transportation services, and that it satisfies all legal requirements necessary to perform the services contemplated by this Agreement. As an independent contractor/enterprise, CONTRACTOR shall be solely responsible for determining how to operate its business and how to perform the Contracted Services. CONTRACTOR need not perform any services personally, but may hire or engage others (as employees and/or subcontractors) to perform all or some of the Contracted Services.

**B.** CONTRACTOR agrees to fully perform the Contracted Services in a timely, efficient, safe and lawful manner and in accordance with the Customer Specifications defining the scope of the service to be performed. PARTSFLEET and its Customer shall have no right to, and shall not, control the manner or prescribe the method CONTRACTOR uses to perform the Contracted Services. Rather, CONTRACTOR shall be solely responsible for determining the most effective, efficient and safe manner to perform the Contracted Services, including determining the manner of delivery, pickup and route selection.

**C.** As a separately established business, CONTRACTOR retains the right to perform services for others and to hold itself out to the general public. The parties recognize that they are or may be engaged in similar

1

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

arrangements with others and nothing in this Agreement shall preclude CONTRACTOR, PARTSFLEET or its Customer from doing business with others. PARTSFLEET neither has nor reserves the right to restrict CONTRACTOR from concurrently or subsequently performing transportation services for other entities or customers, even should such business directly compete with PARTSFLEET or its Customer. Unless prohibited by law, nothing in this Agreement shall prohibit CONTRACTOR from carrying and/or delivering cargo concurrently (i.e., at the same time) for PARTSFLEET or its Customer and other of CONTRACTOR's customers (subject to any agreed upon Customer Specification). Indeed, as a third party logistics company, PARTSFLEET prefers to contract services to providers that service multiple customers in a market because higher business volume leads to efficiencies that often allow negotiation of lower service fees.

      **D.**     CONTRACTOR is not required to purchase, lease or rent any products, equipment or services from PARTSFLEET or its Customer as a condition for doing business with PARTSFLEET or entering into this Agreement. However, CONTRACTOR must utilize communication equipment compatible with PARTSFLEET's or its Customer's system. If CONTRACTOR voluntarily elects to purchase or lease any equipment from PARTSFLEET or its Customer, such arrangement shall be at fair market value and memorialized in writing.

## 3. "CONTRACTED SERVICES"

      **A.**     In addition to any other Engagement PARTSFLEET offers and CONTRACTOR agrees to perform during the term of this Agreement, CONTRACTOR agrees to perform the Contracted Services described in Appendix A (Service Agreement). The parties acknowledge that the parameters of each Engagement are established by the Customer, not PARTSFLEET, and represent the end result desired, not the means by which CONTRACTOR is to accomplish the result.

      **B.**     CONTRACTOR agrees to devote its best efforts to the performance of each Engagement it agrees to perform for a Customer. Generally, full performance of an Engagement includes: (1) pickup and taking of lawful custody of the cargo to be delivered; (2) safe transport of the cargo to the specified delivery location(s) in accordance with all applicable laws; (3) timely delivery and transfer of lawful possession of the product (without damage or loss) to the appropriate consignee; (4) timely submission of all information and documentation required by law and/or specified by the Customer for proof of delivery and chain of custody documentation; and (5) timely return and transfer of lawful custody of any undeliverable cargo to the Customer.

      **C.**     In the event CONTRACTOR fails to fully perform any Engagement it is contractually bound to perform (hereinafter a "service failure"), and the service failure is due to CONTRACTOR's action or omission, CONTRACTOR shall forfeit all or part of the agreed upon service fee for that service (in direct proportion to the degree of CONTRACTOR's responsibility for the service failure). If CONTRACTOR disputes responsibility for a service failure, the dispute shall be resolved pursuant to the "Payment Disputes" provision of this Agreement.

## 4. CONTRACTOR'S EQUIPMENT

      **A.**     Prior to using any vehicle, trailer or other transportation equipment ("Equipment") to perform services under this Agreement, CONTRACTOR shall provide to PARTSFLEET a description of the Equipment using Appendix C to enable PARTSFLEET to determine CONTRACTOR's service capabilities and verify CONTRACTOR's compliance with all legal requirements applicable to the Equipment.

      **B.**     CONTRACTOR certifies that its Equipment meets all industry and regulatory standards and shall be in full working condition and properly licensed and registered to lawfully perform the services contemplated by this Agreement. To the extent CONTRACTOR's vehicles are regulated by the Federal Motor Carrier Safety Regulations or any state equivalent, CONTRACTOR warrants that the regulated Equipment meets and will continue to meet the requirements of the federal and/or state regulations, including as specified in the Appendices to this Agreement. PARTSFLEET shall have the right to verify compliance with all federal, state and local laws and, if requested, CONTRACTOR shall provide to PARTSFLEET copies of all required certificates of inspection and other paperwork demonstrating such compliance.

      **C.**     CONTRACTOR recognizes the importance of vehicle appearance and cleanliness in the commercial delivery industry and, therefore, agrees that all Equipment shall be in a clean condition consistent with generally accepted

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

industry standards whenever used to perform services under this Agreement. CONTRACTOR is responsible for all costs and expenses arising from CONTRACTOR's performance of services under this Agreement, including, but not limited to, costs related to CONTRACTOR's personnel and Equipment. Except as otherwise required by law, CONTRACTOR assumes all risk of damage or loss to its Equipment.

## 5. <u>CONTRACTOR'S PERSONNEL</u>

**A.** CONTRACTOR shall furnish at its own discretion, selection, and expense any and all personnel required, necessary or incidental to CONTRACTOR's performance of the Contracted Services, including any and all employees, agents and subcontractors (collectively "Personnel"). CONTRACTOR shall be solely responsible for the direction and control of the Personnel it uses to perform all Contracted Services.

**B.** CONTRACTOR certifies that all Personnel and Equipment it utilizes to perform the Contracted Services shall meet all industry and regulatory standards and qualifications, including the rules and regulations of the FHA, DOT,FMCSA and any other regulatory body having jurisdiction. CONTRACTOR further certifies that it has and will continue to comply with any and all federal, state and local laws and regulations requiring CONTRACTOR to perform background checks and drug and alcohol screening of any Personnel used to perform services under this Agreement.

**C.** In the event it is required by a Customer, CONTRACTOR agrees to conduct a background check, including a motor vehicle report, and a drug and alcohol screen of any driver used to perform services for a Customer under this Agreement, and further agrees to provide verification of such to PARTSFLEET. Alternatively, CONTRACTOR authorizes PARTSFLEET to arrange for the background check and drug and alcohol screening to be performed by a vendor of PARTSFLEET's choosing. CONTRACTOR shall be responsible for all costs associated with any background check and drug and alcohol screening of CONTRACTOR's Personnel, even if arranged by PARTSFLEET. Upon request, CONTRACTOR shall make available for inspection its records demonstrating compliance with the foregoing requirements. Upon execution of this Agreement, CONTRACTOR shall deliver to PARTSFLEET any and all documentation relating to CONTRACTOR's Personnel that it is required to submit to PARTSFLEET under the rules and regulations of the appropriate regulatory agencies.

**D.** CONTRACTOR assumes full and sole responsibility for the payment of all amounts due to its Personnel for work performed in relation to this Agreement, including all wages, benefits and expenses, if any, and for all required state and federal income tax withholdings, unemployment insurance contributions, and social security taxes as to CONTRACTOR and all Personnel employed by CONTRACTOR in the performance of services under this Agreement, and CONTRACTOR shall further be responsible for meeting and fulfilling the requirements of all regulations now or hereafter prescribed by legally constituted authority with respect thereto. PARTSFLEET shall have no responsibility for any wages, benefits expenses or other payments due CONTRACTOR's Personnel, nor for income tax withholding, social security, unemployment insurance contributions, or other payroll taxes relating to CONTRACTOR's Personnel. Neither CONTRACTOR nor its Personnel shall receive any wages, including vacation pay or holiday pay, from PARTSFLEET or its Customer; nor shall they participate in any welfare plans or receive any other benefits, if any, available to PARTSFLEET's or its Customer's employees, agents, or subcontractors (even if CONTRACTOR or its Personnel are found to be employees of PARTSFLEET and/or its Customer by a court or agency of competent jurisdiction).

**E.** Unless mandated by law, PARTSFLEET shall have no authority to withhold state or federal income taxes, social security taxes, unemployment insurance taxes/contributions, or any other local, state or federal tax on behalf of CONTRACTOR or its Personnel.

**F.** CONTRACTOR's Personnel shall be expected to maintain a professional appearance consistent with the standards in the commercial delivery industry while on the Customer's or consignee's premises where services are performed. However, CONTRACTOR's Personnel shall have no obligation to wear a uniform or other clothing of any type bearing PARTSFLEET's or the Customer's name, logo or colors (unless otherwise specified by the Customer for security purposes and agreed upon by CONTRACTOR).

**G.** In the event CONTRACTOR utilizes the services of an independent contractor or other subcontractor to perform the Contracted Services, CONTRACTOR's subcontractor must satisfy and comply with all of the terms of this

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

Agreement, which CONTRACTOR must make enforceable by written agreement between CONTRACTOR and the subcontractor, a copy of which must be provided to PARTSFLEET. The parties acknowledge that the sole purpose of this requirement is to ensure CONTRACTOR's compliance with the terms of this Agreement and the laws governing the subcontracting of transportation services.

## 6. RELATIONSHIP OF PARTIES

**A.** This Agreement is between two co-equal, independent business enterprises that are separately owned and operated. The parties intend this Agreement to create the relationship of principal and independent contractor and not that of employer and employee. The parties are not employees, agents, joint venturers or partners of each other for any purpose. Neither party shall have the right to bind the other by contract or otherwise except as specifically provided in this Agreement.

**B.** PARTSFLEET shall have no right to, and shall not, control the manner or prescribe the method of accomplishing those services which shall be contracted to, and performed by, CONTRACTOR pursuant to this Agreement, and the general public and all governmental agencies regulating such activities shall be so informed. Those provisions of the Agreement reserving ultimate authority in PARTSFLEET have been inserted solely to achieve compliance with federal, state, or local laws, regulations, and interpretations thereof.

> **By initialing to the right, CONTRACTOR represents that it understands and agrees that it will perform services under this Agreement as an _independent contractor_, not an employee.** 

**C.** PARTSFLEET shall report all settlement payments made to CONTRACTOR on a calendar year basis using IRS Form 1099, which PARTSFLEET may issue directly or through a third party administrator selected for such purpose. CONTRACTOR agrees to report all such payments to the appropriate federal, state and local taxing authorities. Upon execution of this Agreement, CONTRACTOR shall provide PARTSFLEET with CONTRACTOR's business license number, if any, and CONTRACTOR's federal employer identification number.

**D.** Nothing in this Agreement shall obligate CONTRACTOR to purchase any service or benefit (including occupational accident insurance) from PARTSFLEET or any third party. If CONTRACTOR elects to purchase a service or benefit from PARTSFLEET or a third party, CONTRACTOR understands it does so voluntarily, and that it shall be solely and fully responsible for the cost of the service or benefit.

## 7. CONTRACTOR'S SERVICE FEES

**A.** In exchange for the services contemplated by this Agreement, PARTSFLEET agrees to pay CONTRACTOR's service fees, as agreed upon and specified in Appendix A and/or as otherwise negotiated and agreed upon by the parties. The fees CONTRACTOR charges for its services pursuant to Appendix A and as otherwise negotiated constitute the entire amount to be paid for CONTRACTOR's services. As such, CONTRACTOR acknowledges that the fees are intended to cover both CONTRACTOR's labor costs and business expenses.

**B.** The parties agree that PARTSFLEET shall charge back to CONTRACTOR at the time of payment any expense PARTSFLEET has borne that, under this Agreement, CONTRACTOR is obligated to bear, including but not limited to those set forth in Appendix A. Such expenses shall be deducted from CONTRACTOR's service fees, as agreed upon and specified in Appendix A and/or otherwise negotiated and agreed upon by the parties. By executing this Agreement, CONTRACTOR acknowledges that it authorizes all such chargebacks and other deductions specifically provided for in this Agreement, unless properly disputed or otherwise challenged in accordance with the terms of this Agreement.

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

## 8.   CONTRACTOR INVOICING

**A.**   Consistent with the parties' mutual goal of reducing paper waste, the parties hereby express a mutual preference to conduct all invoicing electronically.  To facilitate this process, PARTSFLEET agrees to establish and maintain an electronic system capable of processing electronic invoices.  Unless otherwise agreed upon by the parties, all invoicing shall be conducted electronically using the system PARTSFLEET makes available for this purpose.  Despite this mutual preference, PARTSFLEET shall not unreasonably refuse to agree to an alternative invoicing arrangement (e.g., submission of hardcopy invoices), particularly when used by CONTRACTOR to invoice its other clients.

**B.**   No service fee shall become due or payable until CONTRACTOR properly invoices PARTSFLEET for the related service.  PARTSFLEET shall remit payment of CONTRACTOR's service fees within 30 days of receipt of a proper invoice for the same fees.  To be deemed properly invoiced, CONTRACTOR's invoice must include (unless already submitted) the manifest, waybill, electronic verification or other documentation required by law and/or the Customer for proof of delivery for each service invoiced.  If, after payment is made, PARTSFLEET discovers that CONTRACTOR failed to submit all documentation required by the Customer, or submitted incomplete or inaccurate documentation, PARTSFLEET shall have the right to recover the amount of the improperly invoiced fee from any amounts owed to CONTRACTOR, including future settlement payments, and CONTRACTOR hereby authorizes such deduction.  To recover such a payment, PARTSFLEET must notify CONTRACTOR of the error within thirty (30) calendar days of the date on which the payment was made.  If notice of the error is not made within the thirty (30) day period, it shall be deemed untimely and PARTSFLEET's right to recover the payment shall be waived.

**C.**   Payment by PARTSFLEET to CONTRACTOR under the terms of this Agreement shall be deemed complete and accurate unless disputed within thirty (30) days of CONTRACTOR's receipt of payment.  To dispute a payment, CONTRACTOR must submit written notice of the dispute to PARTSFLEET's Finance Group or, if developed for this purpose, by submitting an electronic notice through PARTSFLEET's invoice and settlement system.  In the absence of such timely written/electronic notice, CONTRACTOR's right to dispute the payment shall be waived and the payment shall become final.  Once final, CONTRACTOR may only dispute a payment if its inaccuracy could not have been discovered within the thirty (30) day dispute period.

## 9.   PAYMENT DISPUTES

**A.**   *CONTRACTOR's Failure*:  In the event CONTRACTOR fails to perform an Engagement or other Contracted Service consistent with Customer Specifications (i.e., a "service failure"), CONTRACTOR shall forfeit all or a portion of the fee relating to that delivery (depending on the extent of the performance failure).  Any reduction in the delivery fee shall be based upon proof provided by the Customer, shipper/consignee, CONTRACTOR and any other party with information relevant to the dispute.  Based upon the information made available, PARTSFLEET shall make the initial determination as to whether a service failure was the result of CONTRACTOR's action/omission and, if so, what percentage of fault CONTRACTOR shall bear (and, therefore, what percentage of the delivery fee CONTRACTOR shall be paid).  CONTRACTOR shall have the right to challenge PARTSFLEET's determination through any legal means contemplated by this Agreement.

**B.**   *PARTSFLEET's Failure*:  In the event PARTSFLEET fails to remit payment of service fees in a timely or accurate manner (as specified in this Agreement), CONTRACTOR shall have the right to seek proper payment by any legal means contemplated by this Agreement provided, however, PARTSFLEET first satisfies the notice requirement of subparagraph A immediately above.

## 10.   INSURANCE

As a condition of doing business with PARTSFLEET, and at its own expense, CONTRACTOR shall maintain current during the life of this Agreement, insurance coverages of the types and in the amounts required by law and as specified in this Agreement.  PARTSFLEET shall have no insurance responsibilities or obligations pertaining to CONTRACTOR other than those expressly stated in this Agreement or mandated by law.

Ver. 1.1 (Rev. 1/2015)

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

## 11.   **CARGO CLAIMS**

**A.**      CONTRACTOR shall be liable to PARTSFLEET and/or its Customer for all damage, shortage, spillage, contamination or other loss to any package, product or shipment that occurs while in the possession, custody or control of CONTRACTOR or its Personnel.   CONTRACTOR agrees to notify PARTSFLEET of any damage or loss as soon as practicable after damage or loss occurs.

**B.**      CONTRACTOR agrees to cooperate with PARTSFLEET and/or its Customer to resolve cargo claims as quickly as possible, and agrees that, after completing a reasonable investigation, PARTSFLEET shall have the right to make the initial determination regarding responsibility for damage or loss.   If CONTRACTOR disputes liability for damage or loss, CONTRACTOR agrees to resolve the dispute by bringing an action in small claims court whenever permitted by law.   In all other instances, CONTRACTOR may dispute a liability determination through any legal means contemplated by this Agreement.   In the event PARTSFLEET is held liable for any loss or damage to cargo caused by CONTRACTOR or its subcontractor, CONTRACTOR agrees that PARTSFLEET shall have the right to recover such amount from CONTRACTOR.

## 12.   **INDEMNITY**

**A.**      PARTSFLEET agrees to indemnify, protect and hold harmless CONTRACTOR from any and all claims, demands, damage, suits, losses, liabilities and causes of action arising directly from PARTSFLEET's actions, including those actions involved in arranging and contracting the Contracted Services to CONTRACTOR, as well as any liability arising from PARTSFLEET's failure to comply with the terms of this Agreement.

**B.**      CONTRACTOR agrees to indemnify, protect and hold harmless PARTSFLEET, including all parent, subsidiary and/or affiliated companies, as well as its and their past and present successors, assigns, officers, owners, directors, agents, representatives, attorneys, and employees, as well as PARTSFLEET's Customers and their customers and/or consignees, from any and all claims, demands, damage, suits, losses, liabilities and causes of action arising directly or indirectly from, as a result of or in connection with, the actions of CONTRACTOR and/or its Personnel arising from the performance of services under this Agreement, including personal injury or death to any person (including to CONTRACTOR and/or its Personnel), as well as any liability arising from CONTRACTOR's failure to comply with the terms of this Agreement.   CONTRACTOR's obligations hereunder shall include the cost of defense as well as the payment of any final judgment rendered against or settlement agreed upon by PARTSFLEET or its parent, subsidiary and/or affiliated companies, or Customer.

**C.**      CONTRACTOR agrees to indemnify, protect and hold harmless PARTSFLEET from any and all tax liabilities and responsibilities for payment of all federal, state and local taxes, including, but not limited to all payroll taxes, self-employment taxes, workers compensation premiums, and any contributions imposed or required under federal, state and local laws, with respect to CONTRACTOR and CONTRACTOR's drivers, helpers, and other personnel (whether employees or subcontractors).

**D.**      CONTRACTOR shall be responsible for, indemnify and hold harmless PARTSFLEET from all costs of CONTRACTOR's business, including, but not limited to, the expense and responsibility for any and all applicable insurance, local, state or federal licenses, permits, taxes, and assessments of any and all regulatory agencies, boards or municipalities.

## 13.   **LICENSES, PERMITS AND OTHER LEGAL AUTHORIZATIONS**

As a condition of doing business with PARTSFLEET and performance of any services under this Agreement, CONTRACTOR must possess and maintain any and all licenses, permits, registrations, base plates, carrier number, operating authority and any other legal authorization required by federal, state or local law to perform the Contracted Services in the state(s) in which CONTRACTOR operates ("Legal Authorizations").   Within 30 days of the execution of this Agreement, CONTRACTOR shall furnish to PARTSFLEET copies of all Legal Authorizations.   To ensure all such Legal Authorizations remain current, PARTSFLEET shall, upon request, be entitled to review such authorizations from time to time

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

## 14. <u>RECORDS</u>

CONTRACTOR agrees to prepare and maintain all documentation necessary to operate as a motor carrier of property in the state or states in which CONTRACTOR operates, including maintaining hours of service logs, maintenance and inspection logs, manifests and driver logs. Similarly, PARTSFLEET shall prepare and maintain all documentation required by law regarding its relationship with CONTRACTOR and, in cases involving a Leased Vehicle (as required under the DOT regulations and other state laws, and as specified further in Appendix E, if applicable), all manifests, documents pertaining to loss and damage claims, and all other papers and records regarding the use of the Leased Vehicle. CONTRACTOR and PARTSFLEET mutually agree to provide to each other copies of any document required to be maintained under this Agreement within 10 days following receipt of a written request.

## 15. <u>CONFIDENTIALITY</u>

**A.** <u>**Confidential Information**</u>: PARTSFLEET and CONTRACTOR understand that the service arrangement created by this Agreement requires the parties to disclose and exchange sensitive and proprietary information regarding their operations and customers that the parties consider confidential (collectively "Confidential Information"). Confidential Information includes, but is not limited to, the following: <u>PARTSFLEET Information</u>: (1) data regarding the identity of PARTSFLEET's customers and shippers, including customer names, addresses, contact persons; contact information (e.g., email addresses and internal phone numbers); (2) rates, rating methods and billing practices; (3) vendor names, addresses and contact persons; (4) marketing and financial plans; (5) data regarding PARTSFLEET's methods, formulae, systems, data processes, technology (6) letters, memoranda, agreements, and other internal documents; (7) financial information regarding PARTSFLEET or its customers that has not been disclosed to the public; and (8) information relating to a customer's business volume and logistics/service needs. <u>CONTRACTOR Information</u>: All data regarding CONTRACTOR's (1) licenses (i.e., legal authorizations); (2) equipment; (3) the identity, if disclosed, of CONTRACTOR's separate customers, including customer names, addresses, contact persons; contact information (e.g., email addresses and internal phone numbers); (4) business operations; and (5) marketing and advertising materials.

**B.** <u>**Non-Use and Non-Disclosure**</u>: Except upon order of government authority having jurisdiction, the parties covenant and agree that they shall not disclose to third parties or use for their own benefit or the benefit of any third party, any Confidential Information entrusted to it by the other party or any of its customers in the performance of services pursuant to this Agreement. Notwithstanding the foregoing, the parties may disclose certain Confidential Information to their employees, agents, subcontractors and representatives (a) who have a reasonable need to know such Confidential Information to perform the services contemplated by this Agreement; (b) who have been advised of the confidential nature of the information; and (c) who have agreed to be bound by the terms of this Agreement. The parties shall be responsible for any breach of this provision by their employees, agents, subcontractors and representatives. The duty of non-disclosure shall not apply to information in the following circumstances: (a) the information was in the public domain at the time it was communicated to the recipient-party or subsequently enters the public domain through no fault of the recipient-party; (b) the recipient-party can prove such information was independently developed by the party or was already known to the party at the time of receipt; (c) such information was communicated rightfully to the recipient-party free of any obligation of nondisclosure and without restriction as to use; or (d) such information is required to be disclosed by the recipient-party pursuant to judicial order or other compulsion of law, provided that the recipient-party shall promptly notify the other party of any such order and comply with any protective or similar order imposed on such disclosure. In the event of an unauthorized disclosure of Confidential Information, the recipient-party shall bear the burden of proving one or more of the above exceptions applies. All Confidential Information shall remain the exclusive property of the disclosing party. Nothing in this Agreement shall be deemed to grant a party any rights in or to the Confidential Information disclosed by the other party, or any part thereof.

**C.** <u>**Breach**</u>: In the event of a party's breach of this Section 15, the parties shall not be bound by the terms of Section 16 (Arbitration Provision) of this Agreement and, therefore, the other party shall have the right to: (i) demand the immediate return of all Confidential Information; (ii) recover its actual damages incurred by reason of such breach, including, without limitation, its attorneys' fees and costs of suit; (iii) obtain injunctive relief to prevent such breach or to otherwise enforce the terms of this Agreement; and (iv) pursue any other remedy available at law or in equity. The parties specifically acknowledge that the unauthorized disclosure or use of Confidential Information would result in irreparable harm for which there is no adequate remedy at law. The parties therefore agree that in the event of any unauthorized

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

disclosure or use, a party shall be entitled to an injunction and that no bond shall be required. This remedy shall be in addition to any other remedy available at law or in equity.

## 16. <u>ARBITRATION PROVISION</u>

**A.** **ARBITRATION OF CLAIMS:** In the event of a dispute between the parties, the parties agree to resolve the dispute as described in this Section (hereafter "the Arbitration Provision"). This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1, et seq., and applies to any dispute brought by either CONTRACTOR or PARTSFLEET arising out of or related to this Agreement, CONTRACTOR's relationship with PARTSFLEET (including termination of the relationship), or the service arrangement contemplated by this Agreement, including cargo claims and payment disputes, <u>but excluding all claims that may be adjudicated in small claims court and actions brought to enforce the Confidentiality provision in Section 15 above</u>. The terms of this Arbitration Provision shall remain in force even after the parties' contractual relationship ends. **BY AGREEING TO ARBITRATE ALL SUCH DISPUTES, THE PARTIES TO THIS AGREEMENT AGREE THAT ALL SUCH DISPUTES WILL BE RESOLVED THROUGH BINDING ARBITRATION BEFORE AN ARBITRATOR AND NOT BY WAY OF A COURT OR JURY TRIAL.**

**i.** ***Claims Covered By Arbitration Provision***: Unless carved out below, claims involving the following disputes shall be subject to arbitration under this Arbitration Provision regardless of whether brought by CONTRACTOR, PARTSFLEET or any agent acting on behalf of either: (1) disputes arising out of or related to this Agreement; (2) disputes arising out of or related to CONTRACTOR's relationship with PARTSFLEET, including termination of the relationship; and (3) disputes arising out of or relating to the interpretation or application of this Arbitration Provision, but not as to the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. This Arbitration Provision also applies, without limitation, to disputes regarding any city, county, state or federal wage-hour law, trade secrets, unfair competition, compensation, meal or rest periods, expense reimbursement, uniform maintenance, training, termination, discrimination or harassment and claims arising under the Uniform Trade Secrets Act, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act, Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, and all other similar federal and state statutory and common law claims (excluding workers' compensation, state disability insurance and unemployment insurance claims).

**ii.** ***Limitations On Application Of This Arbitration Provision***: This Arbitration Provision does not apply to claims for workers compensation, state disability insurance, unemployment insurance benefits or legal actions to enforce the Confidentiality provision of this Agreement. Regardless of any other terms of this Arbitration Provision, claims may be brought before and remedies awarded by an administrative agency if applicable law permits access to such an agency notwithstanding the existence of an agreement to arbitrate. Such administrative claims include without limitation claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov), the U.S. Department of Labor (www.dol.gov), the National Labor Relations Board (www.nlrb.gov), and the Office of Federal Contract Compliance Programs (www.dol.gov/esa/ofccp). Nothing in this Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

**iii.** ***Class Action Waiver***: **CONTRACTOR AND PARTSFLEET AGREE TO BRING ANY DISPUTE IN ARBITRATION ON AN <u>INDIVIDUAL BASIS ONLY</u>, AND NOT ON A CLASS, COLLECTIVE, OR PRIVATE ATTORNEY GENERAL REPRESENTATIVE ACTION BASIS. ACCORDINGLY:**

**(a)** There will be no right or authority for any dispute to be brought, heard or arbitrated as a class action ("Class Action Waiver"). The Class Action Waiver shall not be severable from this Arbitration Provision in any case in which (1) the dispute is filed as a class action and (2) a civil court of competent jurisdiction finds the Class Action Waiver is unenforceable. In such instances, the class action must be litigated in a civil court of competent jurisdiction.

8

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

(b)      There will be no right or authority for any dispute to be brought, heard or arbitrated as a collective action ("Collective Action Waiver").  The Collective Action Waiver shall not be severable from this Agreement in any case in which (1) the dispute is filed as a collective action and (2) a civil court of competent jurisdiction finds the Collective Action Waiver is unenforceable.  In such instances, the collective action must be litigated in a civil court of competent jurisdiction.

(c)      There will be no right or authority for any dispute to be brought, heard or arbitrated as a private attorney general representative action ("Private Attorney General Waiver").  The Private Attorney General Waiver shall be severable from this Agreement in any case in which (1) the dispute is filed as a private attorney general action and (2) a civil court of competent jurisdiction finds the Private Attorney General Waiver is unenforceable.  In such instances, the private attorney general action must be litigated in a civil court of competent jurisdiction.

**B.**      **ARBITRATION PROCEDURE:** Except as provided in this Arbitration Provision, any controversy or claim covered by this Arbitration Provision shall be settled by arbitration administered by the American Arbitration Association ("AAA") and shall be held in accordance with the applicable AAA Arbitration rules.  These rules are available at www.adr.org.  The Arbitrator shall be selected by mutual agreement of CONTRACTOR and PARTSFLEET.  Unless CONTRACTOR and PARTSFLEET mutually agree otherwise, the Arbitrator shall be an attorney licensed to practice in the location where the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the jurisdiction where the arbitration will be conducted.  If for any reason the parties cannot agree to an Arbitrator, either party may apply to a court of competent jurisdiction with authority over the location where the arbitration will be conducted for appointment of a neutral Arbitrator.  The court shall then appoint an Arbitrator, who shall act under this Arbitration Provision with the same force and effect as if the parties had selected the Arbitrator by mutual agreement.  The location of the arbitration proceeding shall be no more than 45 miles from the geographic area where CONTRACTOR performed delivery services arranged by PARTSFLEET, unless each party to the arbitration agrees in writing otherwise.  If CONTRACTOR no longer resides in the general geographical vicinity where CONTRACTOR performed delivery services, CONTRACTOR and PARTSFLEET shall agree to a location of the arbitration within 45 miles of where CONTRACTOR resides, provided it is within the same state in which CONTRACTOR performed delivery services arranged by PARTSFLEET.  In arbitration, the parties shall have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator.

**C.**      **MAKING A DEMAND FOR ARBITRATION:** A demand for arbitration must be in writing and delivered by hand or first class mail to the other party within the applicable statute of limitations period.  Any demand for arbitration made to PARTSFLEET shall be sent to PARTSFLEET's Vice President of IC Compliance, 2251 Lynx Lane, Suite 5, Orlando, FL 32804.  The Arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration.

**D.**      **ATTORNEY'S FEES AND ARBITRATION COSTS:** Each party shall pay the fees for its own attorneys, subject to any remedies to which that party may later be entitled under applicable law.  Costs incidental to the arbitration, including the cost of the Arbitrator and the meeting site ("Arbitration Costs") will be borne by PARTSFLEET and CONTRACTOR equally, unless otherwise required by applicable law.  Any dispute regarding a party's obligation to pay Arbitration Costs shall be determined by the Arbitrator.  In the event CONTRACTOR contends that, as a matter of law, it is not responsible for payment of any Arbitration Costs, CONTRACTOR shall have no obligation to pay any portion of the contested Arbitration Costs until, and only if, the Arbitrator determines that CONTRACTOR is responsible for the costs.  If necessary for arbitration of the dispute, PARTSFLEET agrees to cover the amount of the Arbitration Costs contested by CONTRACTOR until such time as the Arbitrator determines payment responsibility.  If the Arbitrator determines that CONTRACTOR is responsible for any amount of the Arbitration Costs already paid by PARTSFLEET, CONTRACTOR shall remit payment of that amount to PARTSFLEET within 30 days of the Arbitrator's determination.

**E.**      **POST-ARBITRATION PROCEDURES:** Within 30 days of the close of the arbitration hearing (which period may be extended by stipulation of the parties), any party shall have the right to prepare, serve on the other party and file with the Arbitrator a post-arbitration brief.  The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in its or her or his individual capacity in a court of law for the claims presented to and decided by the Arbitrator, and no remedies that

9

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

otherwise would be available to an individual in a court of law will be forfeited by virtue of this Arbitration Provision. The Arbitrator shall issue a decision or award in writing, stating the essential findings of fact and conclusions of law. Except as may be permitted or required by law, as determined by the Arbitrator, or as needed to enforce an arbitration award, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of the parties. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.

**F.** **APPLICATION TO EXISTING CLAIMS AND CONTROVERSIES:** This Arbitration Provision is intended broadly to apply to all controversies hereafter arising out of or related to the parties' relationship or CONTRACTOR's performance of services for PARTSFLEET or its customers, as well as any existing controversy that has arisen from the parties' relationship or CONTRACTOR's performance of services for PARTSFLEET or its customers, as is permitted under Section 2 of the Federal Arbitration Act.

**G.** **OPT-OUT PROVISION:** If CONTRACTOR does not want to be subject to this Arbitration Provision, CONTRACTOR may opt out by notifying PARTSFLEET in writing of CONTRACTOR's desire to opt out of this Arbitration Provision, which writing must be dated, signed and submitted by U.S. Mail or hand delivery to PARTSFLEET's Vice President of IC Compliance, 2251 Lynx Lane, Suite 5, Orlando, FL 32804. In order to be effective, the writing must clearly indicate CONTRACTOR's intent to opt out of this Arbitration Provision and the envelope containing the signed writing must be post-marked within 21 days of the date this Agreement is signed by CONTRACTOR. CONTRACTOR's writing opting out of this Arbitration Provision will be filed with a copy of this Agreement and maintained by PARTSFLEET. Should CONTRACTOR not opt out of this Arbitration Provision within the 21-day period, CONTRACTOR and PARTSFLEET shall be bound by the terms of this Arbitration Provision.

**H.** **RIGHT TO CONSULT WITH AN ATTORNEY:** CONTRACTOR has the right to consult with private counsel of CONTRACTOR's choice with respect to any aspect of, or any claim that may be subject to, this Arbitration Provision. Subject to the exceptions listed in subsection A.iii.(a)-(c), in the event any portion of this Arbitration Provision is deemed unenforceable, the remainder of this Arbitration Provision will be enforceable.

## 17. TERM AND TERMINATION OF AGREEMENT

**A.** This Agreement shall remain in full force and effect for a term of one year from the Effective Date and may not be terminated early without penalty except in the following limited circumstances:

**i.** Upon the mutual written consent of the parties hereto, with the mutually agreed upon termination date set forth in the written notice.

**ii.** By either party without cause upon thirty (30) days' written notice to the other party, with the date of mailing commencing the thirty (30) day period.

**iii.** If one party has materially breached the Agreement, immediately upon written notice to the breaching party, with such notice specifying the breach relied upon.

**B.** Early termination of this Agreement by either party without proper notice (as established in subsection A above) shall result in liquidated damages of $100.00 for each day that notice is not properly provided, up to a maximum amount of $500.00. The parties acknowledge that liquidated damages are appropriate because actual damages are not reasonably ascertainable.

**C.** A party that receives notice of termination must continue to fulfill its obligations under this Agreement for the entire notice period. Failure to perform the Contracted Services shall constitute early termination and shall subject the party to the liquidated damages provision in subparagraph B above. By executing this Agreement, CONTRACTOR agrees that any liquidated damages assessed against it may be deducted from any amount PARTSFLEET owes to CONTRACTOR, including settlement amounts for services performed.

Ver. 1.1 (Rev. 1/2015)

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

**D.** The following list, which is not intended to be exhaustive, identifies acts, omissions and occurrences that individually constitute a material breach of this Agreement:

**i.** Failure by either party to maintain current insurance coverages in the amounts and types specified herein or as required by law.

**ii.** Failure by PARTSFLEET to remit to CONTRACTOR all service fees due and owing within 30 days of invoicing.

**iii.** Refusal by CONTRACTOR to reimburse a Customer or PARTSFLEET for any damage or loss caused by CONTRACTOR.

**iv.** Refusal by PARTSFLEET to provide documentation requested by CONTRACTOR reasonably relating to a cargo claim arising under this Agreement.

**v.** Refusal by CONTRACTOR to provide a contractually obligated service or Engagement (i.e., after CONTRACTOR's acceptance of the Engagement).

**vi.** The improper use or disclosure of confidential or proprietary information by either party.

**vii.** Failure by either party to possess and maintain all licenses, permits, registrations and other authorizations required by law and/or this Agreement necessary for the performance of this Agreement, including temporary suspension of any required license or operating authority.

**viii.** Any act by a party that causes the other party to violate its obligations under any applicable state, federal, or local law.

**ix.** Failure by CONTRACTOR to maintain all documentation required by law, including hours of service logs, maintenance and inspection logs, and manifests and driver logs.

**x.** Violation by CONTRACTOR and/or its employee or subcontractor of any state or federal criminal law regulating transportation services or fair business dealings.

**xi.** Theft by CONTRACTOR or its Personnel, including submission of false invoices or other information for the purpose of obtaining service fees to which CONTRACTOR is not entitled.

**xii.** Documented complaint that CONTRACTOR or its Personnel engaged in conduct that a reasonable person would find physically threatening, highly offensive, or harassing made by an employee or agent of PARTSFLEET, a Customer, or a consignee.

**E.** CONTRACTOR's and PARTSFLEET's obligations and rights arising under the Confidentiality and Arbitration Provisions of this Agreement shall survive termination of this Agreement.

**F.** Upon termination of this Agreement for any reason, CONTRACTOR shall immediately, at CONTRACTOR's sole expense, return to PARTSFLEET or its Customer any undelivered cargo, all shipping documentation, COD collections, and any other property of PARTSFLEET or its Customer in CONTRACTOR's possession. If CONTRACTOR fails to perform the foregoing obligations or refuses to provide evidence demonstrating performance of same, CONTRACTOR agrees that PARTSFLEET may withhold the cost of any unreturned cargo and property from any amount PARTSFLEET owes CONTRACTOR.

## 18. ENTIRE AGREEMENT, TRANSFERABILITY AND WAIVER

**A.** This Agreement, including all Appendices, attachments, and schedules, shall constitute the entire agreement and understanding between the parties and shall not be modified, altered, changed or amended in any

11

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

respect, unless in writing and signed by both parties. This Agreement supersedes any prior contract between the parties. This Agreement may not be assigned by either party without written consent of the other and shall be binding upon the parties hereto, including their heirs and successors, provided, however, that PARTSFLEET may assign its rights and obligations under this Agreement to an affiliate of PARTSFLEET or any successor to its business and/or purchaser of substantially all of its assets..

    **B.**      The failure of PARTSFLEET or CONTRACTOR in any instance to insist upon a strict performance of the terms of this Agreement or to exercise any option herein, shall not be construed as a waiver or relinquishment of such term or option and such term or option shall continue in full force and effect.

## 19.   <u>MISCELLANEOUS</u>

    **A.**      MERGER OF UNDERSTANDING:  This Agreement sets forth correctly the effect of all preliminary negotiations, understandings, and agreements between the parties and supersedes any and all previous agreements whether written or verbal.  This Agreement and appendices shall not be modified, altered, changed, or amended in any respect unless in writing and signed by both parties.

    **B.**      CAPTIONS:  Captions appearing in this Agreement are for convenience only and do not in any way limit, amplify, modify, or otherwise affect the terms and provisions of this Agreement.

    **C.**      SAVINGS CLAUSE:  With the exception of the Arbitration Provision, if any part of this Agreement is declared unlawful or unenforceable, the remainder of this Agreement shall remain in full force and effect.

    **D.**      FAILURE TO ENFORCE:  Failure of either party to enforce strictly any provision of this Agreement shall not be construed as a waiver thereof, or as excusing the other party from future performance.

    **E.**      FORCE MAJEURE:  The performance of the obligations of this Agreement on the part of either PARTSFLEET or CONTRACTOR shall be excused by reasons of closing of public highways, changes in Customer operations and/or receiving requirements, strikes or work stoppages, weather conditions that make operations unsafe or impractical, Acts of God, or the temporary or permanent cessation of business by PARTSFLEET or the Customer for which CONTRACTOR is to perform the Contracted Services.

    **F.**      ASSIGNMENT:  This Agreement may not be assigned by either party, provided, however, PARTSFLEET shall have the right to assign its rights and obligations hereunder to an affiliate of PARTSFLEET.

    **G.**      GOVERNING LAW:  This Agreement shall be governed by and construed in accordance with the laws of the state in which CONTRACTOR performs the majority of the services covered by this Agreement.

**CONTRACTOR ACKNOWLEDGES AND REPRESENTS THAT CONTRACTOR HAS READ AND FULLY UNDERSTANDS THE PROVISIONS OF THIS AGREEMENT, AND HAS HAD SUFFICIENT TIME AND OPPORTUNITY TO CONSULT WITH FINANCIAL, TAX, AND LEGAL ADVISORS PRIOR TO EXECUTING THIS AGREEMENT.**

Ver. 1.1 (Rev. 1/2015)

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

**IN WITNESS WHEREOF**, the parties hereto enter into and execute this Agreement on the dates specified below.

| | |
|---|---|
| **PARTSFLEET II, INC.** | **CONTRACTOR** |
| Dated: 5/26/2016 , 20____ | Dated: 5/20/2016 , 20____ |
| Signature: *Daniel Fee* <br> 09CBB88DF19747B... | Signature: *Wilhelmina Brown* <br> 431C2601AA9F415... |
| Name: Daniel Fee | Name: Wilhelmina Brown |
| Title: _____ | Title: Driver |
| | Address: 2202 E. 97th Street |
| | City: Chicago      State: IL |
| | Zip Code: 60617 |
| | Phone #: _____ |

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

## Appendix A
### Independent Contractor Agreement

### SERVICE AGREEMENT

This Appendix A to the Independent Contractor Agreement ("Agreement") shall be effective on the latest date set forth below and will continue in force until superseded or the Agreement is terminated. This Appendix A supersedes and replaces any previously executed Appendix A.

## 1. "CONTRACTED SERVICES" AND SERVICE FEES

**A.** Unless otherwise agreed to in writing, all service Engagements offered to and accepted by CONTRACTOR shall be subject to the terms described below, which define the scope of the "Contracted Services" to be performed by CONTRACTOR, as well as the fees CONTRACTOR shall charge for such services.

| "AS NEGOTIATED" DELIVERY SERVICE: | |
|---|---|
| **Routed Delivery Service:** | **Scope of service and fees negotiated at time of offer/acceptance** |
| **STAT Engagements:** | **Scope of service and fees negotiated at time of offer/acceptance** |

**B.** For the purpose of calculating "miles from point of origin" for STAT Engagements, CONTRACTOR's location at the time the Engagement is accepted shall be used.

## 2. CUSTOMER SPECIFICATIONS

**A.** Subject to the terms of the Agreement, CONTRACTOR agrees to perform the Contracted Services in accordance with all CUSTOMER specifications, including those identified below:

| DRUG AND ALCOHOL TESTING: | ☒ Yes ☐ No |
|---|---|
| If the "Yes" box is checked, one or more CUSTOMER to be serviced by CONTRACTOR requires individuals performing the Contracted Services to be subject to certain drug and alcohol testing and/or background checks. CONTRACTOR agrees to comply with CUSTOMER's specifications by using only drivers and other personnel who have satisfied the requirements specified by the CUSTOMER. Prior to performance of the Contracted Services, Contractor understands that evidence of compliance with this requirement must be submitted to or obtained by PARTSFLEET. | |

Ver. 1.1 (Rev. 1/2015)

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

| SECURITY IDENTIFICATION | ☐ Yes ☐ No ☒ 'TBD' |
|---|---|

If the "Yes" box is checked, for security reasons one or more CUSTOMER to be serviced by CONTRACTOR requires individuals performing the Contracted Services to wear "security identification apparel" to identify the individual as a professional delivery provider affiliated with PARTSFLEET. When applicable, CONTRACTOR agrees to comply with this security requirement by arranging for all personnel performing the Contracted Services to wear the proper security identification apparel. CONTRACTOR's personnel shall have no obligation to wear or display security identification apparel at any time other than while on CUSTOMER's or its customer's premises.

If the "TBD" box is checked, it is unknown whether one or more CUSTOMER to be serviced by CONTRACTOR requires individuals performing the Contracted Services to wear "security identification apparel." Accordingly, CONTRACTOR shall be informed of any such requirement at the time PARTSFLEET offers and/or CONTRACTOR accepts a service Engagement subject to such a security identification requirement. If CONTRACTOR chooses to accept an Engagement subject to a CUSTOMER's Security Identification requirement, CONTRACTOR agrees to abide by the requirement in the manner described in the paragraph immediately above.

## 3. <u>CHARGE BACK ITEMS</u>

    **A.** CONTRACTOR expressly authorizes the following items to be charged back and deducted from CONTRACTOR's services fees and/or settlement payments, as also addressed in Section 7 of the Agreement:

| CHARGE BACK ITEM | COST | ADMINISTRATIVE CHARGE |
|---|---|---|
| Communication Device Rental | See Appendix D | None |
| Cargo Claim | Actual loss up to $1,000 | None |
| C.O.D. Charges | Actual | None |
| Fines and Penalties | Actual | None |
| Property Damage | Actual | None |
| Insurance Costs | See Appendix B | See Appendix B |

    **B.** CONTRACTOR agrees that PARTSFLEET may charge back to CONTRACTOR any other expenses or cost incurred by PARTSFLEET for which CONTRACTOR is responsible for under the Agreement, this Appendix or as otherwise agreed to by the parties. CONTRACTOR hereby waives any objection to any charge back item unless CONTRACTOR notifies PARTSFLEET of CONTRACTOR's disagreement with such charge back within thirty (30) days of the charge back.

Ver. 1.1 (Rev. 1/2015)

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

**THIS APPENDIX A** is agreed to by the undersigned parties as of the latest date set forth below.

**PARTSFLEET II, INC.**

Dated: 5/26/2016 , 20_____

Signature: _____

Name: Daniel Fee

**CONTRACTOR**

Dated: 5/20/2016 , 20_____

Signature: Wilhelmina Brown

Name: Wilhelmina Brown

---

**APPENDIX A**                    3

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

# Appendix B
## Independent Contractor Agreement

## INSURANCE AND ALLOCATION OF LIABILITY

This Appendix B to the parties' Independent Contractor Agreement ("Agreement") shall be effective on the latest date set forth below and will continue in force until superseded or the Agreement is terminated.

## 1.  CONTRACTOR'S INSURANCE OBLIGATIONS

**A.**  Subject to any more stringent requirement imposed by state or local law, as a condition of doing business with PARTSFLEET, and at its own expense, CONTRACTOR shall maintain current during the life of this Agreement, insurance of the types and in the amounts specified below.  All required insurance policies must be issued by an insurance company authorized to do business in the state or states in which CONTRACTOR does business.  CONTRACTOR acknowledges that failure to secure or maintain satisfactory insurance coverage shall be deemed a material breach of this Agreement and shall result in the immediate termination of the Agreement and the loss of CONTRACTOR's right to perform the Contracted Services.

**i.**  Vehicle Insurance.  CONTRACTOR agrees that each vehicle used to perform the Contracted Services shall be covered by a vehicle liability insurance policy with a minimum coverage limit of not less than that required by law.  CONTRACTOR shall provide evidence of such insurance coverage by delivering to PARTSFLEET, before the Equipment performs services under this Agreement, current certificates of vehicle liability insurance.  To ensure public safety, CONTRACTOR further agrees to provide updated certificates each time CONTRACTOR purchases, renews or alters its insurance coverage.  Furthermore, CONTRACTOR must provide PARTSFLEET with written notice at least thirty (30) days prior to cancellation of any insurance policy required by PARTSFLEET.  For the purpose of receiving notice in the event CONTRACTOR's insurance coverage lapses, CONTRACTOR shall list PARTSFLEET as an additional insured on CONTRACTOR's vehicle insurance policy.  Notwithstanding the foregoing, PARTSFLEET shall have no right to control CONTRACTOR's selection or maintenance of its insurance policies.

**ii.**  Workers' Compensation Insurance.  Subject to the limited exception contained in subsections iv. and v. below, CONTRACTOR shall maintain workers' compensation insurance to the extent required by law covering all individuals performing services under this Agreement.

**iii.**  Occupational Accident Insurance:  If permitted by law, CONTRACTOR may choose to insure him or herself against industrial injuries by maintaining occupational accident insurance rather than workers' compensation insurance.  CONTRACTOR's subcontractors may also, to the extent permitted by law, maintain occupational accident insurance rather than workers' compensation insurance.  All of CONTRACTOR's employees, however, must be covered by workers' compensation insurance, as required by law. As evidence of such coverage, CONTRACTOR shall provide COMPANY with a copy of the insurance policy declarations page for COMPANY's verification before operating the Equipment under this Agreement. Such coverage shall be no less comprehensive than the coverage COMPANY will facilitate on CONTRACTOR's behalf if CONTRACTOR so chooses, as provided in Section 5 of this Appendix. If CONTRACTOR is the sole owner and the sole and exclusive operator of the Equipment, then CONTRACTOR may, as an alternative to obtaining workers' compensation coverage, obtain occupational accident insurance coverage that includes either an endorsement or a separate policy provision whereby the insurer provides, or agrees to provide, workers' compensation coverage that becomes effective for a claim by CONTRACTOR alleging employee status. Such occupational accident insurance coverage shall be no less comprehensive than the coverage COMPANY will facilitate on CONTRACTOR's behalf if CONTRACTOR so chooses, as provided in Section 4 of this Appendix

---

**APPENDIX B**                              1

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

**iv.** No person performing services pursuant to this Agreement, including CONTRACTOR's employees and/or subcontractors, may enter the premises of any PARTSFLEET location or PARTSFLEET's Customer's location without being covered by workers' compensation insurance or occupational accident insurance, as required by this Section. To ensure compliance with this requirement, CONTRACTOR agrees to provide proof of workers' compensation insurance and/or occupational accident insurance for all individuals performing the Contracted Services, which proof must be submitted prior to the individual's performance of any services under this Agreement.

**B.** In addition to any other insurance coverage required under this Agreement, it is CONTRACTOR'S responsibility to procure, carry and maintain any fire, theft, uninsured and/or underinsured motorist, and physical damage (collision), or other insurance coverage that CONTRACTOR may desire for the Equipment or for CONTRACTOR's health care or other needs. As provided in this Agreement, CONTRACTOR holds COMPANY harmless with respect to loss of or damage to CONTRACTOR's Equipment, trailer, or other property, and COMPANY has no responsibility to procure, carry, or maintain any insurance covering loss of or damage to CONTRACTOR's Equipment, trailer, or other property. CONTRACTOR acknowledges that PARTSFLEET may, and CONTRACTOR hereby authorizes PARTSFLEET to, waive and reject no-fault, uninsured, and underinsured motorist coverage from PARTSFLEET's insurance policies to the extent allowed under law and CONTRACTOR shall cooperate in the completion of all necessary documentation for such waiver, election, or rejection.

## 2.  REQUIREMENTS APPLICABLE TO ALL OF CONTRACTOR'S INSURANCE COVERAGES

CONTRACTOR shall procure insurance policies providing the above-described coverage solely from insurance carriers that are A.M. Best "A"-rated, and CONTRACTOR shall not operate the Equipment under this Agreement unless and until COMPANY has determined that the policies are acceptable (PARTSFLEET's approval shall not be unreasonably withheld). CONTRACTOR shall furnish to COMPANY written certificates obtained from CONTRACTOR'S insurance carriers showing that all insurance coverage required above have been procured from A.M. Best "A" rated insurance carriers, that the coverage are being properly maintained, and that the premiums thereof are paid. Each insurance certificate shall specify the name of the insurance carrier, the policy number, and the expiration date; list PARTSFLEET as an additional insured with primary coverage; and show that written notice of cancellation or modification of the policy shall be given to PARTSFLEET at least thirty (30) days prior to such cancellation or modification.

## 3.  CONTRACTOR'S LIABILITY IF REQUIRED COVERAGES ARE NOT MAINTAINED

**A.** In addition to CONTRACTOR's hold harmless/indemnity obligations to PARTSFLEET under this Agreement, CONTRACTOR agrees to defend, indemnify, and hold PARTSFLEET harmless from any direct, indirect, or consequential loss, damage, fine, expense, including reasonable attorney fees, actions, claim for injury to persons, including death, and damage to property that PARTSFLEET may incur arising out of or in connection with CONTRACTOR'S failure to maintain the insurance coverage required by this Agreement. In addition, CONTRACTOR, on behalf of its insurer, expressly waives all subrogation rights against PARTSFLEET, and, in the event of a subrogation action brought by CONTRACTOR's insurer, CONTRACTOR agrees to defend, indemnify, and hold PARTSFLEET harmless from such claim. If CONTRACTOR fails to provide proper evidence of the purchase or maintenance of the insurance required above, then PARTSFLEET is authorized but not required to obtain such insurance at CONTRACTOR's expense and deduct, from CONTRACTOR's settlement compensation, amounts reflecting all of PARTSFLEET's expense in obtaining and administering such coverage.

## 4.  AVAILABILITY OF INSURANCE FACILITATED BY COMPANY

**A.** CONTRACTOR may if is so chooses by initialing the appropriate "Yes" box in the right-hand column of the attached "CERTIFICATE OF INSURANCE," authorize PARTSFLEET to facilitate, on CONTRACTOR's behalf, the occupational accident insurance coverage set forth in this Agreement. CONTRACTOR recognizes that PARTSFLEET is not in the business of selling insurance, and any insurance coverage requested by CONTRACTOR from PARTSFLEET is subject to all of the terms, conditions, and exclusions of the actual policy issued by the insurance underwriter. PARTSFLEET shall ensure that CONTRACTOR is provided with a certificate of insurance (as required by 49 C.F.R. § 376.12(j)(2)) for each insurance policy under which the CONTRACTOR has authorized PARTSFLEET to facilitate

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

insurance coverage from the insurance underwriter (each such certificate to include the name of the insurer, the policy number, the effective dates of the policy, the amounts and types of coverage, the cost to CONTRACTOR for each type of coverage, and the deductible amount for each type of coverage for which CONTRACTOR may be liable), and PARTSFLEET shall provide CONTRACTOR with a copy of each policy upon request.

## 5. <u>CHANGES IN COST OR OTHER DETAILS OF COVERAGES</u>

**A.** If PARTSFLEET is facilitating any insurance coverage for CONTRACTOR pursuant to Section 4 of this Appendix and the cost to CONTRACTOR for, or other details of, a coverage changes from the information listed in the attached "CERTIFICATE OF INSURANCE", CONTRACTOR will be so notified by personal delivery, fax, or other written notice. In any event, CONTRACTOR shall not be subject to any such change until ten (10) calendar days after such notice or such later time as is set forth in the notice. **CONTRACTOR's failure, by the end of ten (10) calendar days after such notice, to notify PARTSFLEET of any objection to the change shall constitute CONTRACTOR's express consent and authorization to PARTSFLEET to implement the change and modify accordingly the deductions from CONTRACTOR's settlement compensation, beginning immediately after the 10-day period. Such modified amounts shall replace and supersede those shown in the Certificate of Insurance and PARTSFLEET shall not have an obligation to also provide a revised Certificate of Insurance.** If CONTRACTOR fails to notify PARTSFLEET of any objection within the 10-day period -- or if CONTRACTOR notifies PARTSFLEET of its objection within the 10-day period and CONTRACTOR and PARTSFLEET are then unable to resolve the matter to their mutual satisfaction -- CONTRACTOR and PARTSFLEET shall each have the right to terminate this Agreement effective immediately upon the change becoming effective (although CONTRACTOR shall remain subject to the change until CONTRACTOR's termination's effective date and time).

**THIS APPENDIX B** is agreed to by the undersigned parties as of the latest date set forth below.

**PARTSFLEET, INC.**

Dated: _5/26/2016_ , 20____

Signature: _[DocuSigned by signature]_
09CBB88DF19747B...

Name: _Daniel Fee_

**CONTRACTOR**

Dated: _5/20/2016_ , 20____

Signature: _Wilhelmina Brown_
431C2601AA9F415...

Name: _Wilhelmina Brown_

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

# CERTIFICATE OF INSURANCE

CONTRACTOR hereby requests COMPANY, through its insurer, to facilitate on CONTRACTOR's behalf (if they are available) the insurance coverages CONTRACTOR has selected by placing CONTRACTOR's initials in the right-hand column below:

| TYPE OF COVERAGE | INITIAL "YES" TO REQUEST COVERAGE |
|---|---|
| 1.  **Occupational Accident Insurance:**<br><br>*Name of Insurer:* Hudson Insurance Group<br><br>*Policy No:* HOA101-00114<br><br>*Effective Date(s) of Coverage:* 01/01/2016<br><br>*Amount of Coverage:* $100,000,000 per work related accident or illness<br><br>*Current Cost to CONTRACTOR: 3.00% of gross settlement, up to a maximum of $21.00 per week*<br><br>[COVERAGE IS AVAILABLE ONLY TO A SOLE-PROPRIETOR CONTRACTOR WHO IS EXCLUSIVE DRIVER OF THE EQUIPMENT.]<br><br>*Deductible For Which CONTRACTOR Is Liable: $ 0* | X  YES  *WB*<br><br>____ NO |

**THIS CERTIFICATE** is agreed to by the undersigned parties as of the latest date set forth below.

**PARTSFLEET, INC.:**                                  **CONTRACTOR:**

By: _Daniel Fee_ (DocuSigned by)          By: _Wilhelmina Brown_ (DocuSigned by)

Daniel Fee                                                  Wilhelmina Brown
Printed Name                                              Printed Name

Dated: 5/26/2016                                        Dated: 5/20/2016

Ver. 1.1 (Rev. 1/2015)

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

## Appendix C
### Independent Contractor Agreement

### CONTRACTOR'S EQUIPMENT

**VEHICLE #** _Yes_

Vehicle Make: Ford

Vehicle Year: 2016

VIN: 1FADP3F22GL274452

License Plate No.: Z992981

Ins Company Name: StateFarm

---

**VEHICLE #** _____

Vehicle Make: _____

Vehicle Year: _____

VIN: _____

License Plate No.: _____

Ins Company Name: _____

---

**VEHICLE #** _____

Vehicle Make: _____

Vehicle Year: _____

VIN: _____

License Plate No.: _____

Ins Company Name: _____

---

**VEHICLE #** _____

Vehicle Make: _____

Vehicle Year: _____

VIN: _____

License Plate No.: _____

Ins Company Name: _____

Ver. 1.1 (Rev. 1/2015)

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

## Appendix D
### Independent Contractor Agreement

### SCANNER AND OPTIONAL LEASE AGREEMENT

This Appendix D to the Independent Contractor Agreement ("Agreement") shall be effective on the latest date set forth below and will continue in force until superseded or the Agreement is terminated.

## 1.    SCANNER SPECIFICATIONS

**A.**    The parties recognize that in the modern era, the recording and transmittal of information regarding the movement of cargo is a central component of any transportation service, including Engagements CONTRACTOR agrees to perform for any Customer pursuant to the Agreement.  CONTRACTOR, therefore, agrees to record and transmit the shipping information required by Customers using a scanner compatible with PARTSFLEET's and/or the Customer's system, specifically, the Motorola MC65 DC/Scan unit, the HTC View/ Flyer Tablet unit, an approved Android Smartphone unit, or an iPhone unit (hereafter "Scanner").

**B.**    CONTRACTOR will satisfy the above requirements by providing the Scanner(s) in the manner designated below, and specifically agrees to the terms set forth in the designated option.

## [DESIGNATE <u>ONE</u> OF THE FOLLOWING OPTIONS BY CHECKING THE APPROPRIATE BOXES.]

| Option A – No Scanner Lease: | ☒ YES ☐ NO |
| --- | --- |

I will provide a **Motorola MC65 DC/Scan unit, a HTC View/ Flyer Tablet unit, an approved Android Smartphone unit** or an **iPhone** (the "Unit") with an **active cellular data plan** to support work performed.  I will procure and install the courier application on the Unit and allow said applications to utilize my **cellular data plan and GPS location services**. I am responsible for using the device, my cellular data plan, and the installed applications to perform all work for PARTSFLEET.  By accepting, I will **not** receive a deduction from my weekly settlement and I am fully responsible for the performance and operability of the Unit, the **cellular data plan and enabling GPS location services on my device**.  The Company takes no responsibility for any damage or impairment to the Unit, nor any interruption to the **cellular data plan**.

| Option B – Scanner Lease w/o Data Plan: | ☐ YES ☒ NO |
| --- | --- |

I will lease a **Motorola MC65 DC/Scan unit**, but I will provide my own SIM-based (AT&T or T-Mobile) cellular data plan for the device.  I am responsible for maintaining an **active cellular data plan and ensuring the GPS location services remain active** on the leased **Motorola MC65 DC/Scan unit** during the lease period.  I will pay a lease amount of <u>**4% of the settlement payment owed me for each settlement period up to a maximum of $10.00 per period**</u> during the lease term.

This option is only available with the **Motorola MC65 DC/Scan** unit.

Ver. 1.1 (Rev. 1/2015)

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

| Option C – Scanner Lease w/ Data Plan: | ☐ YES  ☒ NO |
|---|---|

I will lease both a **Motorola MC65 DC/Scan unit** and a **cellular data plan** to operate the unit or I will lease both a **HTC View/ Flyer Tablet unit** and a **cellular data plan** to operate the unit or I will lease both an **approved Android Smartphone unit** and a **cellular data plan** to operate the unit. I will pay a lease amount of <u>**4% of the settlement payment owed me for each settlement payment up to a maximum of $15.00 per period**</u> for any such service during the lease term.

**[IF OPTION B OR C IS SELECTED ABOVE, CHECK "YES" TO AGREE TO "SCANNER LEASE TERMS" BELOW.]**

| Scanner Lease Terms (Option B and C): | ☐ YES  ☒ NO |
|---|---|

Upon receipt of the scan unit, **CONTRACTOR shall submit a refundable deposit of $250.00, which amount may be submitted in payments of no less than $10.00 a week (for a maximum period of 25 weeks).** This amount will serve as the deposit for the **Motorola MC65 DC/Scan unit**, the **HTC View/ Flyer Tablet unit**, or the **approved Android Smartphone unit** and all accessories, and **will be refunded if/when the unit and all accessories are returned to PARTSFLEET in good operating condition.**

**CONTRACTOR acknowledges** that the full cost of the **Motorola MC65 DC/Scan unit** totals **$1,045.00**, the full cost of the **HTC View/ Flyer Tablet unit** totals **$430.00**, and the full cost of the **approved Android Smartphone unit** totals **$450.00**; and agrees to be responsible for the care and maintenance of the leased unit during the entire term of this lease. **CONTRACTOR understands and agrees that PARTSFLEET shall deduct from the deposit the cost of repairing or replacing the leased unit in the event it is lost, damaged or stolen.**

    **i.**    **CONTRACTOR agrees to pay PARTSFLEET the amount of $225.00 to cover the cost of any damage to the Motorola MC65 DC/Scan unit, the HTC View/ Flyer Tablet unit, or the approved Android Smartphone unit caused by my negligence, if it can be repaired.**

    **ii.**    **CONTRACTOR agrees to pay PARTSFLEET $1,045.00 less deposit collected for the Motorola MC65 DC/scan unit, $430.00 less deposit collected for the HTC View/ Flyer Tablet unit, or $450.00 less deposit collected for the approved Android Smartphone unit to cover the replacement of any device damaged beyond repair or reported lost/ stolen at any time during lease period.**

    **iii.**    **Upon termination of the Agreement or this lease, CONTRACTOR agrees to return all leased Units (Motorola MC65 DC/scan devices, HTC View/ Flyer Tablet devices, or approved Android Smartphone devices along with any and all accessories (i.e., Home chargers, Car chargers, Strap & Stylus) to PARTSFLEET within <u>twenty-four (24) hours of the effective date of the termination.</u>**

    **iv.**    **Should CONTRACTOR fail to return any leased Unit after termination (as required above), CONTRACTOR agrees to pay to PARTSFLEET the full replacement cost of $1,045.00 less deposit collected for the Motorola MC65 DC/scan unit or the full replacement cost of $430.00 less deposit collected for the HTC View/ Flyer Tablet unit or the full replacement cost of $450.00 less deposit collected for the approved Android Smartphone unit, which amount CONTRACTOR hereby authorizes PARTSFLEET to deduct from CONTRACTOR's final settlement check.**

Ver. 1.1 (Rev. 1/2015)

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

**THIS APPENDIX D** is agreed to by the undersigned parties as of the latest date set forth below.

## PARTSFLEET II, INC.

Dated: 5/26/2016 _____, 20 _____

Signature: _____
09CBB88DF19747B...

Name: Daniel Fee _____

## CONTRACTOR

Dated: 5/20/2016 _____, 20 _____

Signature _____
431C2601AA9F415...

Name: Wilhelmina Brown _____

Ver. 1.1 (Rev. 1/2015)

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

## *[ONLY COMPLETE IF EQUIPMENT REGULATED BY DOT]*

### Appendix E
### Independent Contractor Agreement

### OPERATIONS REGULATED BY THE FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION

1.      **APPLICABILITY.**      The terms of this Appendix E shall apply only to those transportation services provided by CONTRACTOR that fall within the regulatory jurisdiction of the U.S. Department of Transportation ("DOT") and the Federal Motor Carrier Safety Administration ("FMCSA"), as specified in 49 U.S.C. § 13501. This Appendix E, together with all provisions of the accompanying AGREEMENT that are not inconsistent herewith, shall constitute the "Lease" required by the DOT for such services pursuant to 49 C.F.R. Part 376.11(a).

2.      **LEASE.**      CONTRACTOR hereby Leases to PARTSFLEET ("COMPANY") and COMPANY hereby leases from CONTRACTOR the equipment, hereinafter called "Leased Equipment." The CONTRACTOR represents and warrants that the CONTRACTOR has title to or is authorized to contract the Leased Equipment to the COMPANY during the term of the Service Agreement.

3.      **COMMENCEMENT AND DURATION.**  This Appendix E shall become effective as of the date set forth above and shall remain in effect until the date upon which the Agreement to which this Appendix E is attached is terminated, whereupon this Appendix E shall automatically terminate. Immediately before the commencement of operation of any piece of Leased Equipment under this Appendix E, COMPANY shall furnish CONTRACTOR with an equipment receipt meeting the requirements of 49 C.F.R. §376.11(b), whereupon the terms of this Appendix E shall begin to apply. The terms of this Appendix E shall cease to apply, and COMPANY's possession of the Leased Equipment shall end, with the delivery of the last COMPANY shipment to the final destination. CONTRACTOR shall, immediately upon termination of the Agreement, remove all of COMPANY's identification devices from the equipment and return them to COMPANY via hand delivery or certified mail (provided that if the identification devices have been lost or stolen, a written letter certifying their removal will satisfy this requirement), together with all of the COMPANY's other property, including paperwork and cargo to the COMPANY's nearest terminal. If CONTRACTOR fails to return this property upon termination of this Agreement, CONTRACTOR shall pay the COMPANY all expenses, including reasonable attorney fees, incurred by the COMPANY in seeking the return of such items, and the COMPANY may pursue all other remedies allowed by law or authorized in the Agreement against CONTRACTOR.

4.      **IDENTIFICATION OF EQUIPMENT.**      COMPANY shall identify the Equipment in accordance with the requirements of the DOT and appropriate state regulatory agencies. COMPANY shall have the right to place and maintain on the Equipment COMPANY's name and any lettering, advertisement, slogans or designs as COMPANY may choose. CONTRACTOR shall remove such identification at the termination of this Agreement or while operating such Equipment for any purpose other than conducting COMPANY's business. At its discretion, CONTRACTOR may have the identification permanently painted on the Equipment. CONTRACTOR further agrees to keep the Equipment in clean appearance and identified as described herein, at its sole cost and expense. COMPANY agrees that CONTRACTOR may display CONTRACTOR's name and address on the Equipment where required by applicable state law.

5.      **COMPENSATION AND PAYMENT.**      COMPANY and CONTRACTOR shall agree in advance upon compensation for services relating to deliveries under this Appendix E by both parties' signing an addendum to this Agreement, setting forth such agreed upon compensation prior to commencement of such services. Compensation set forth in such addendums shall constitute the entire compensation to which CONTRACTOR is entitled under this Agreement for all services performed with respect to the delivery or deliveries identified or referred to therein. CONTRACTOR shall EITHER manually sign the addendum and deliver it to COMPANY by hand, fax, or overnight delivery OR electronically sign it by e-mail or other electronic means. For electronic agreements, COMPANY shall deliver to CONTRACTOR for CONTRACTOR's files a paper copy of the executed addendum, which, if CONTRACTOR signed the addendum electronically, shall state in the signature block the date of CONTRACTOR's electronic approval. Copies of

APPENDIX E                                             1

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

any fully-signed addendum pursuant to the provisions above shall be attached by CONTRACTOR and COMPANY to their respective copies of the Agreement. CONTRACTOR shall not commence any delivery for COMPANY until CONTRACTOR has furnished COMPANY a manual or electronically signed addendum stating the compensation for such delivery. CONTRACTOR shall receive payment for services in accordance with Appendix A to this Agreement. As mandated by 49 C.F.R. 376.12(f), such payment shall be made within fifteen (15) days after CONTRACTOR submits to COMPANY (i) the signed freight bill, delivery receipts or bill of lading, and properly completed logbooks required by the DOT and (ii) those documents necessary for COMPANY to secure payment from its customers. COMPANY will give CONTRACTOR, at the time of payment, a rated freight bill or other document showing equivalent information for each shipment, and a statement showing total hauling revenue and all chargeback items and deductions. CONTRACTOR shall also have the right to inspect, during regular business hours, COMPANY's delivery manifests, tariff and other documents from which chargebacks, deductions rates and charges are computed; provided, however, only that information that would appear on a rated freight bill will be disclosed by COMPANY.

**6.** **CHARGE BACK.** COMPANY shall charge back to CONTRACTOR at the time of payment or settlement, any liability or expense COMPANY has incurred or paid that, under this Agreement or any addendum to this Agreement, CONTRACTOR is obligated to bear. Such expenses shall be deducted from the amount of CONTRACTOR's compensation. The amount of each item to be charged back to CONTRACTOR shall be computed based on the actual cost or expense incurred by COMPANY and any administrative fee or mark-up disclosed in this Agreement or any addendum thereto. COMPANY shall provide CONTRACTOR written itemization and documentation of all charge backs where such documentation is necessary to verify the validity of the charge.

**7.** **EXPENSES.** CONTRACTOR shall pay all costs attendant to the operation and maintenance of the Leased Equipment including, without limitation, fuel costs, fuel taxes, empty mileage, all permits, tolls, ferries, detention and accessorial services, base plates, licenses, any unused portions of such items and all costs and expenses described in Section 7 of the Agreement. CONTRACTOR shall have the duty to determine that all shipments are in compliance with the size and weight laws of states in which or through which the Equipment will travel and to notify COMPANY if the vehicle is overweight, oversized or in need of permits before commencing the haul. As required by 49 C.F.R. 376.12(e), COMPANY shall assume the risks and costs of fines for overweight and oversize vehicles, when such vehicles are pre-loaded, sealed or the load is containerized, or when the trailer or lading is otherwise outside of CONTRACTOR's control, and of fines for improperly permitted over dimension and overweight loads, and shall reimburse CONTRACTOR for any such fines paid by CONTRACTOR, except when the violations occasioning such fines result from the acts or omissions of CONTRACTOR. The CONTRACTOR is not required to purchase or rent any products, equipment, or services from the COMPANY as a condition of entering into the Agreement. However, in the event the CONTRACTOR elects to purchase or rent any such items from the COMPANY or from any third party, for which the CONTRACTOR requests COMPANY to make deductions from CONTRACTOR's compensation, then the parties mutually agree to attach and incorporate the terms of such purchase or lease to the Agreement as a separate addendum.

**(a)** **LICENSE PLATES.** Upon request by CONTRACTOR, COMPANY shall obtain a base plate under the International Registration Plan ("IRP") in COMPANY's name for use by CONTRACTOR, the cost of which shall be deducted from CONTRACTOR's compensation in the amount of $_____ per week until the cost of the plate is paid in full. CONTRACTOR shall remove and return such plate to COMPANY upon the termination of this Agreement and, in the event CONTRACTOR fails or refuses to do so, COMPANY shall, and is hereby authorized to, deduct the full cost of the plate from CONTRACTOR's final settlement and escrow funds. If COMPANY receives a refund or credit for an IRP plate registered in the name of COMPANY or such base plate is authorized by CONTRACTOR to be resold by COMPANY to another contractor, COMPANY shall refund to CONTRACTOR a pro-rata share of the amount received by COMPANY. CONTRACTOR shall not be entitled to reimbursement for any unused portion of a base plate, however, unless COMPANY is able to reuse or resale the plate to another contractor.

**(b)** **FUEL TAXES.** For the purposes of computing and paying all state fuel taxes owed for the Equipment, COMPANY shall issue CONTRACTOR a fuel card to be used for all fuel purchases. All fuel charges and state fuel taxes will be charged back to CONTRACTOR as allowed for under this Agreement. In the event CONTRACTOR or its drivers fail to use COMPANY's fuel card, CONTRACTOR shall be responsible for providing COMPANY with an accurate accounting of all fuel purchases and miles traveled for the purposes of computing state fuel tax liability, and CONTRACTOR shall provide COMPANY with all original fuel receipts.

**APPENDIX E** 2

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

8.    **INSURANCE.** It shall be COMPANY's responsibility, pursuant to DOT regulations promulgated under 49 U.S.C. § 13906 and pursuant to applicable state laws, to provide public liability, property damage, and cargo liability insurance for the Equipment at all times while the Equipment is being operated on behalf of COMPANY. However, COMPANY's possession of such insurance shall in no way affect COMPANY's rights of indemnification against CONTRACTOR as provided for in this Agreement.

9.    **LOSS OR DAMAGE.** CONTRACTOR will be liable for loss or damage to items intended for transport occurring while such items are in CONTRACTOR's possession or under his dominion and control. Before making deductions from settlements with CONTRACTOR to reflect such loss or damage, COMPANY shall provide CONTRACTOR with a written explanation and itemization of such deductions.

10.    **[THIS SECTION INTENTIONALLY OMITTED]**

11.    **CONTROL AND EXCLUSIVE USE.** The Equipment shall be for COMPANY's exclusive possession, control, and use for the duration of this Agreement. As such, CONTRACTOR shall not operate the Equipment for any other motor carrier or entity during the term of this Agreement without prior written consent from COMPANY. COMPANY shall assume complete responsibility for the operation of the Equipment for the duration of this Agreement. This section is set forth solely to conform with DOT regulations and shall not be used for any other purposes, including any attempt to classify CONTRACTOR as an employee of COMPANY. Nothing in the provisions required by 49 C.F.R. § 376.12(c)(1) is intended to affect whether CONTRACTOR or its drivers are an independent contractor or an employee of COMPANY. An independent contractor relationship may exist when a carrier complies with 49 U.S.C. § 14102 and attendant administrative requirements. Notwithstanding the above, CONTRACTOR is not prohibited from providing transportation services for other common or contract carriers or any other person or entity, provided that Contractor complies with the trip lease requirements set forth under federal law in 49 C.F.R. Part 376. CONTRACTOR may trip lease or subcontract the Equipment to a third party upon receiving prior authorization from COMPANY. COMPANY assumes no responsibility for the collection of freight charges or payment to CONTRACTOR for any trip-lease or subcontract related revenue. During the term of any trip lease or subcontract, CONTRACTOR will remove or cover up all of COMPANY's identification on the Equipment and display instead the trip-lease carrier's identification and, as between CONTRACTOR and COMPANY, COMPANY will have no responsibility for, and CONTRACTOR will fully indemnify COMPANY regarding, the operation of the Equipment.

12.    **PAPERWORK REQUIREMENTS.** CONTRACTOR shall submit to COMPANY, on a timely basis, all driver logs and supporting documents (including original toll receipts for COMPANY's reproduction), physical examination certificates, accident reports, and any other required data, documents or reports. As required by 49 C.F.R. § 376.12(l), COMPANY will keep the original of this Agreement with a copy to be maintained by CONTRACTOR, and a second copy to be carried in the Equipment during the term of this Agreement.

13.    **SHIPPING DOCUMENTS.** CONTRACTOR agrees that all bills of lading, waybills, freight bills, manifests, or other papers identifying the property carried on the Equipment shall be those of COMPANY, or as authorized by COMPANY, and shall indicate that the property transported is under the responsibility of COMPANY or a carrier with which the Equipment has been subcontracted.

14.    **DRUG AND ALCOHOL TESTING.** CONTRACTOR and its drivers shall comply with COMPANY's Drug and Alcohol Policy, including participation in COMPANY's random drug and alcohol testing program, and any addendums or revisions thereto.

15.    **PASSENGER AUTHORIZATION.** As required by 49 C.F.R. § 392.60, CONTRACTOR shall not allow any passengers to ride in the Equipment unless authorized in writing by COMPANY as required by law. Before passenger authorization will be given by COMPANY, CONTRACTOR (or its driver) and the passenger requesting authorization shall submit a fully executed Passenger Authorization and Release of Liability form to COMPANY for prior approval.

16.    **LOADING AND UNLOADING.** In the event the shipper or consignee does not assume loading and unloading responsibilities, CONTRACTOR shall be responsible for the loading or unloading of property transported on behalf of COMPANY at CONTRACTOR's expense.

Ver. 1.1 (Rev. 1/2015)

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

**17.** **LAWS.** CONTRACTOR shall comply with all federal, state and local laws, rules and regulations pertaining to his performance under this Appendix E.

**18.** **EFFECT OF VALIDITY ON PROVISION.** In case any one or more of the provisions contained in this Appendix E should be or become invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall in no way be affected, prejudiced or disturbed thereby.

**THIS APPENDIX E** is agreed to by the undersigned parties as of the latest date set forth below.

*[REMINDER: COMPLETE ONLY IF OPERATING EQUIPMENT REGULATED BY DOT]*

**PARTSFLEET II, INC.**

Dated: 5/26/2016 , 20_____

Signature: _____
DocuSigned by: 09CBB88DF19747B...

Name: Daniel Fee _____

**CONTRACTOR**

Dated: 5/20/2016 , 20_____

Signature: _____
DocuSigned by: Wilhelmina Brown 431C2601AA9F415...

Name: Wilhelmina Brown _____

Firmwide:119329321.2 063404.1007

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

## Illinois State Law Appendix
### Independent Contractor Agreement

## OPERATIONS REGULATED BY ILLINOIS LAW

This Appendix to the Independent Contractor Agreement ("Agreement") shall apply to any transportation services CONTRACTOR performs pursuant to the Agreement that are subject to the laws of the state of Illinois, as referenced or described below. To the extent that any contractual or legal requirement imposed by this Appendix exceeds that set forth in the Agreement, the heightened standard set forth in this Appendix shall apply.

Subject to the foregoing, at all times required by law CONTRACTOR agrees to:

(1)    register with the Illinois Commerce Commission and maintain a Public Carrier Certificate;

(2)    if performing services on an interstate basis, comply with all applicable provisions of the Uniform Carrier Registration ("UCR") program, as provided for in 49 U.S.C. Section 14504; and

(3)    meet or exceed the minimum coverage standards for insurance required under Illinois and federal law.

THIS APPENDIX is agreed to by the undersigned parties as of the latest date set forth below.

**COMPANY**

Dated: 5/26/2016

Signature: *Daniel Fee* (DocuSigned by: 09CBB88DF19747B...)

Name: Daniel Fee

**CONTRACTOR**

Dated: 5/20/2016

Signature: *Wilhelmina Brown* (DocuSigned by: 431C2601AA9F415...)

Name: Wilhelmina Brown

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

 Arthur J. Gallagher & Co.

Gallagher Transportation Services

## Independent Contractors of Partsfleet, Inc.
## Occupational Accident Benefit
## December 31, 2015

| Benefit | Limits |
|---|---|
| **Occupational Benefits:** | |
| **Accidental Death** | $25,000* |
| **Survivors Benefit** | $1,250* payable up to 100 months. |
| **Accidental Dismemberment/Paralysis** | $150,000* |
| **Accident Medical Expense** | **$1,000,000** |
| Medical Benefits Payable | Medical is primary |
| - Payment Period | Up to 104 weeks |
| **Limits on Medical Expense** | |
| Per Accident | $1,000,000 |
| Deductible | N/A |
| Maximum Benefit Period | 104 weeks |
| **Temporary Total Disability** | |
| Weekly Benefit | 70 % Of Past wages up to $500 Maximum Per Week |
| - Disability Commencement Period | 90 days. |
| - Waiting Period | 7 Days |
| - Maximum Benefit Period | 104 weeks |
| **Continuous Total Disability** | |
| Weekly/Monthly Benefit | 70 % Of Past wages up to $500 Maximum Per Week. |
| - Maximum Benefit Period | Up to Age 75, subject to Social Security Disability Award and Offset |
| - Waiting Period | 104 Weeks |
| **Combined Single Limit** | $1,000,000 |
| **Aggregate** | $2,000,000 |
| **Non-Occupational Benefits** | Limits |
| **Accidental Death** | $15,000 |
| **Accidental Dismemberment** | $15,000 |
| **Accident Medical Expense** | $10,000 |
| - Maximum Benefit Period | 52 Weeks |
| All claims are subject to the full policy terms, conditions and exclusions. | |

Arthur J. Gallagher Risk Management Services, Inc.
2345 Grand Boulevard | Suite 400
Kansas City, Missouri  64108

p    816.421.7788
t    800.279.7500
ajg.com

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

Form W-9 (Rev. 12-2014)    

**Note.** If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien;

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States;

• An estate (other than a foreign estate); or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax under section 1446 on any foreign partners' share of effectively connected taxable income from such business. Further, in certain cases where a Form W-9 has not been received, the rules under section 1446 require a partnership to presume that a partner is a foreign person, and pay the section 1446 withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid section 1446 withholding on your share of partnership income.

In the cases below, the following person must give Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States:

• In the case of a disregarded entity with a U.S. owner, the U.S. owner of the disregarded entity and not the entity;

• In the case of a grantor trust with a U.S. grantor or other U.S. owner, generally, the U.S. grantor or other U.S. owner of the grantor trust and not the trust; and

• In the case of a U.S. trust (other than a grantor trust), the U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person or the U.S. branch of a foreign bank that has elected to be treated as a U.S. person, do not use Form W-9. Instead, use the appropriate Form W-8 or Form 8233 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

*Example.* Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity, give the requester the appropriate completed Form W-8 or Form 8233.

## Backup Withholding

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 28% of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, payments made in settlement of payment card and third party network transactions, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the Part II instructions on page 3 for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See *Exempt payee code* on page 3 and the separate Instructions for the Requester of Form W-9 for more information.

Also see *Special rules for partnerships* above.

## What is FATCA reporting?

The Foreign Account Tax Compliance Act (FATCA) requires a participating foreign financial institution to report all United States account holders that are specified United States persons. Certain payees are exempt from FATCA reporting. See *Exemption from FATCA reporting code* on page 3 and the Instructions for the Requester of Form W-9 for more information.

## Updating Your Information

You must provide updated information to any person to whom you claimed to be an exempt payee if you are no longer an exempt payee and anticipate receiving reportable payments in the future from this person. For example, you may need to provide updated information if you are a C corporation that elects to be an S corporation, or if you no longer are tax exempt. In addition, you must furnish a new Form W-9 if the name or TIN changes for the account; for example, if the grantor of a grantor trust dies.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

## Specific Instructions

### Line 1

You must enter one of the following on this line; **do not** leave this line blank. The name should match the name on your tax return.

If this Form W-9 is for a joint account, list first, and then circle, the name of the person or entity whose number you entered in Part I of Form W-9.

**a. Individual.** Generally, enter the name shown on your tax return. If you have changed your last name without informing the Social Security Administration (SSA) of the name change, enter your first name, the last name as shown on your social security card, and your new last name.

**Note. ITIN applicant:** Enter your individual name as it was entered on your Form W-7 application, line 1a. This should also be the same as the name you entered on the Form 1040/1040A/1040EZ you filed with your application.

**b. Sole proprietor or single-member LLC.** Enter your individual name as shown on your 1040/1040A/1040EZ on line 1. You may enter your business, trade, or "doing business as" (DBA) name on line 2.

**c. Partnership, LLC that is not a single-member LLC, C Corporation, or S Corporation.** Enter the entity's name as shown on the entity's tax return on line 1 and any business, trade, or DBA name on line 2.

**d. Other entities.** Enter your name as shown on required U.S. federal tax documents on line 1. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on line 2.

**e. Disregarded entity.** For U.S. federal tax purposes, an entity that is disregarded as an entity separate from its owner is treated as a "disregarded entity." See Regulations section 301.7701-2(c)(2)(iii). Enter the owner's name on line 1. The name of the entity entered on line 1 should never be a disregarded entity. The name on line 1 should be the name shown on the income tax return on which the income should be reported. For example, if a foreign LLC that is treated as a disregarded entity for U.S. federal tax purposes has a single owner that is a U.S. person, the U.S. owner's name is required to be provided on line 1. If the direct owner of the entity is also a disregarded entity, enter the first owner that is not disregarded for federal tax purposes. Enter the disregarded entity's name on line 2, "Business name/disregarded entity name." If the owner of the disregarded entity is a foreign person, the owner must complete an appropriate Form W-8 instead of a Form W-9. This is the case even if the foreign person has a U.S. TIN.

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

## Line 2

If you have a business name, trade name, DBA name, or disregarded entity name, you may enter it on line 2.

## Line 3

Check the appropriate box in line 3 for the U.S. federal tax classification of the person whose name is entered on line 1. Check only one box in line 3.

**Limited Liability Company (LLC).** If the name on line 1 is an LLC treated as a partnership for U.S. federal tax purposes, check the "Limited Liability Company" box and enter "P" in the space provided. If the LLC has filed Form 8832 or 2553 to be taxed as a corporation, check the "Limited Liability Company" box and in the space provided enter "C" for C corporation or "S" for S corporation. If it is a single-member LLC that is a disregarded entity, do not check the "Limited Liability Company" box; instead check the first box in line 3 "Individual/sole proprietor or single-member LLC."

## Line 4, Exemptions

If you are exempt from backup withholding and/or FATCA reporting, enter in the appropriate space in line 4 any code(s) that may apply to you.

**Exempt payee code.**

• Generally, individuals (including sole proprietors) are not exempt from backup withholding.

• Except as provided below, corporations are exempt from backup withholding for certain payments, including interest and dividends.

• Corporations are not exempt from backup withholding for payments made in settlement of payment card or third party network transactions.

• Corporations are not exempt from backup withholding with respect to attorneys' fees or gross proceeds paid to attorneys, and corporations that provide medical or health care services are not exempt from backup withholding with respect to payments reportable on Form 1099-MISC.

The following codes identify payees that are exempt from backup withholding. Enter the appropriate code in the space in line 4.

1—An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2)

2—The United States or any of its agencies or instrumentalities

3—A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

4—A foreign government or any of its political subdivisions, agencies, or instrumentalities

5—A corporation

6—A dealer in securities or commodities required to register in the United States, the District of Columbia, or a U.S. commonwealth or possession

7—A futures commission merchant registered with the Commodity Futures Trading Commission

8—A real estate investment trust

9—An entity registered at all times during the tax year under the Investment Company Act of 1940

10—A common trust fund operated by a bank under section 584(a)

11—A financial institution

12—A middleman known in the investment community as a nominee or custodian

13—A trust exempt from tax under section 664 or described in section 4947

The following chart shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 13.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
|---|---|
| Interest and dividend payments | All exempt payees except for 7 |
| Broker transactions | Exempt payees 1 through 4 and 6 through 11 and all C corporations. S corporations must not enter an exempt payee code because they are exempt only for sales of noncovered securities acquired prior to 2012. |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 4 |
| Payments over $600 required to be reported and direct sales over $5,000[1] | Generally, exempt payees 1 through 5[2] |
| Payments made in settlement of payment card or third party network transactions | Exempt payees 1 through 4 |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, gross proceeds paid to an attorney reportable under section 6045(f), and payments for services paid by a federal executive agency.

**Exemption from FATCA reporting code.** The following codes identify payees that are exempt from reporting under FATCA. These codes apply to persons submitting this form for accounts maintained outside of the United States by certain foreign financial institutions. Therefore, if you are only submitting this form for an account you hold in the United States, you may leave this field blank. Consult with the person requesting this form if you are uncertain if the financial institution is subject to these requirements. A requester may indicate that a code is not required by providing you with a Form W-9 with "Not Applicable" (or any similar indication) written or printed on the line for a FATCA exemption code.

A—An organization exempt from tax under section 501(a) or any individual retirement plan as defined in section 7701(a)(37)

B—The United States or any of its agencies or instrumentalities

C—A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

D—A corporation the stock of which is regularly traded on one or more established securities markets, as described in Regulations section 1.1472-1(c)(1)(i)

E—A corporation that is a member of the same expanded affiliated group as a corporation described in Regulations section 1.1472-1(c)(1)(i)

F—A dealer in securities, commodities, or derivative financial instruments (including notional principal contracts, futures, forwards, and options) that is registered as such under the laws of the United States or any state

G—A real estate investment trust

H—A regulated investment company as defined in section 851 or an entity registered at all times during the tax year under the Investment Company Act of 1940

I—A common trust fund as defined in section 584(a)

J—A bank as defined in section 581

K—A broker

L—A trust exempt from tax under section 664 or described in section 4947(a)(1)

M—A tax exempt trust under a section 403(b) plan or section 457(g) plan

**Note.** You may wish to consult with the financial institution requesting this form to determine whether the FATCA code and/or exempt payee code should be completed.

## Line 5

Enter your address (number, street, and apartment or suite number). This is where the requester of this Form W-9 will mail your information returns.

## Line 6

Enter your city, state, and ZIP code.

## Part I. Taxpayer Identification Number (TIN)

**Enter your TIN in the appropriate box.** If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see *How to get a TIN* below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-member LLC that is disregarded as an entity separate from its owner (see *Limited Liability Company (LLC)* on this page), enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

**Note.** See the chart on page 4 for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local SSA office or get this form online at *www.ssa.gov*. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at *www.irs.gov/businesses* and clicking on Employer Identification Number (EIN) under Starting a Business. You can get Forms W-7 and SS-4 from the IRS by visiting IRS.gov or by calling 1-800-TAX-FORM (1-800-829-3676).

If you are asked to complete Form W-9 but do not have a TIN, apply for a TIN and write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note.** Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** *A disregarded U.S. entity that has a foreign owner must use the appropriate Form W-8.*

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 4, or 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). In the case of a disregarded entity, the person identified on line 1 must sign. Exempt payees, see *Exempt payee code* earlier.

**Signature requirements.** Complete the certification as indicated in items 1 through 5 below.

**1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

**2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

**3. Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments made in settlement of payment card and third party network transactions, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account [1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 5. Sole proprietorship or disregarded entity owned by an individual | The owner [3] |
| 6. Grantor trust filing under Optional Form 1099 Filing Method 1 (see Regulations section 1.671-4(b)(2)(i)(A)) | The grantor* |

| For this type of account: | Give name and EIN of: |
|---|---|
| 7. Disregarded entity not owned by an individual | The owner |
| 8. A valid trust, estate, or pension trust | Legal entity [4] |
| 9. Corporation or LLC electing corporate status on Form 8832 or Form 2553 | The corporation |
| 10. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 11. Partnership or multi-member LLC | The partnership |
| 12. A broker or registered nominee | The broker or nominee |
| 13. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| 14. Grantor trust filing under the Form 1041 Filing Method or the Optional Form 1099 Filing Method 2 (see Regulations section 1.671-4(b)(2)(i)(B)) | The trust |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or DBA name on the "Business name/disregarded entity" name line. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

[4] List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see *Special rules for partnerships* on page 2.

*Note. Grantor also must provide a Form W-9 to trustee of trust.

**Note.** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records from Identity Theft

Identity theft occurs when someone uses your personal information such as your name, SSN, or other identifying information, without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:

• Protect your SSN,

• Ensure your employer is protecting your SSN, and

• Be careful when choosing a tax preparer.

If your tax records are affected by identity theft and you receive a notice from the IRS, respond right away to the name and phone number printed on the IRS notice or letter.

If your tax records are not currently affected by identity theft but you think you are at risk due to a lost or stolen purse or wallet, questionable credit card activity or credit report, contact the IRS Identity Theft Hotline at 1-800-908-4490 or submit Form 14039.

For more information, see Publication 4535, Identity Theft Prevention and Victim Assistance.

Victims of identity theft who are experiencing economic harm or a system problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

**Protect yourself from suspicious emails or phishing schemes.** Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to *phishing@irs.gov*. You may also report misuse of the IRS name, logo, or other IRS property to the Treasury Inspector General for Tax Administration (TIGTA) at 1-800-366-4484. You can forward suspicious emails to the Federal Trade Commission at: *spam@uce.gov* or contact them at *www.ftc.gov/idtheft* or 1-877-IDTHEFT (1-877-438-4338).

Visit IRS.gov to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons (including federal agencies) who are required to file information returns with the IRS to report interest, dividends, or certain other income paid to you; mortgage interest you paid; the acquisition or abandonment of secured property; the cancellation of debt; or contributions you made to an IRA, Archer MSA, or HSA. The person collecting this form uses the information on the form to file information returns with the IRS, reporting the above information. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation and to cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their laws. The information also may be disclosed to other countries under a treaty, to federal and state agencies to enforce civil and criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism. You must provide your TIN whether or not you are required to file a tax return. Under section 3406, payers must generally withhold a percentage of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to the payer. Certain penalties may also apply for providing false or fraudulent information.

DocuSign Envelope ID: 834B6D9C-E812-4E78-89A9-197747CE8B9E



# Deduction Authorization

**City:** Chicago          **Submitted by (OM):** John Ramonez

**I authorize Partsfleet II, Inc. to deduct the appropriate sum for the customer required items indicated below from my next weekly settlement payments.**

1          **Drug Screen** at the cost of $27.00 each          **Deduction will be over the next 3 weeks
           *Per customer requirements.

1          **IC Background Check** at the cost of $22.00 each   **Deduction will be over the next 3 weeks
           *Per customer requirements.

   1       _____ **ID Badge(s) at the cost of $3.50 each (Replacement badges are an additional $3.50 per badge)**
           *Per customer requirements.

1          **Emergency Response Guidebook at the cost of $2.42 each**
           *Per customer requirements detailing Hazmat emergency response procedures.

1          **MVR Motor Vehicle Report at the cost of $8.50 each**
           *Per customer requirements.

**I agree to acquire and maintain any customer specific apparel required to provide services.**
*Customer requested apparel can be purchased via Vernon Company, if necessary.

**Total to be deducted: $** 63.42 **from IC ID#:** 100338          **Date:** 5/26/2016

**IC Name:** Wilhelmina Brown          **IC Signature:** *Wilhelmina Brown*
                                                    DocuSigned by:
                                                    431C2601AA0F415...

Rev. 4.19.2016