IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILHELMINA BROWN, KENTON ) <br> JOHNSON, and NIKIA DUNBAR, ) <br> individually and on behalf of all others ) <br> similarly situated, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> WORLDPAC, INC., ) <br> ) <br> Defendant. ) | No. 17 CV 6396 <br><br> Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Wilhelmina Brown, Kenton Johnson, and Ava Nikia Dunbar filed a five-count complaint against defendant Worldpac based on plaintiffs' alleged employment relationship with defendant. Plaintiffs' complaint alleges the following: violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. (Counts I and II); violation of the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105, et seq. (Counts III and IV); and violation of the Chicago Minimum Wage Ordinance ("CMWO"), Chicago, IL, Municipal Code, § 1-24-020 (Count V).[1] Defendant has moved, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §1, et seq., to dismiss and compel individual arbitrations, or to stay the proceedings. For the reasons discussed below, defendant's motion is granted in part.

---

[1] Counts I through III are pled on behalf of all plaintiffs and the proposed class. Counts IV and V are pled on behalf of Brown, Johnson, and the proposed class.

## BACKGROUND[2]

Defendant is a wholesale distributor of automotive parts. Defendant contracts with a third party staffing company, Partsfleet, that provides drivers who deliver the automotive parts that defendant sells to its customers. Plaintiffs provided such services to defendant through Partsfleet. Before plaintiffs began delivering automotive parts for defendant, Partsfleet required them to sign an Independent Contractor Agreement ("the Agreement"). The Agreement provides in pertinent part:

> PURPOSE OF AGREEMENT: This agreement governs the relationship between PARTSFLEET and CONTRACTOR, and establishes the terms applicable to all services arranged by PARTSFLEET or its Customer and performed by CONTRACTOR, including but not limited to the "Contracted Services" [ ] involved in any Engagement accepted by CONTRACTOR.
>
> ARBITRATION OF CLAIMS: In the event of a dispute between the parties, the parties agree to resolve the dispute as described in this Section (hereinafter "the Arbitration Provision"). This Arbitration Provision is governed by the Federal Arbitration Act [ ] and applies to any dispute brought by either CONTRACTOR or PARTSFLEET arising out of or related to this Agreement, CONTRACTOR'S relationship with PARTSFLEET [ ] or the service arrangement contemplated by this Agreement.
>
> Class Action Waiver: CONTRACTOR AND PARTSFLEET AGREE TO BRING ANY DISPUTE IN ARBITRATION ON AN INDIVIDUAL BASIS ONLY, AND NOT ON A CLASS, COLLECTIVE, OR PRIVATE ATTORNEY GENERAL REPRESENTATIVE ACTION BASIS.

Doc. 14, Exh. 1-A at 1, 8 (emphasis in original).

Plaintiffs claim that they were misclassified as independent contractors, rather than employees, they were paid less than the minimum wage, and that they were not compensated for hours worked overtime, all in violation of the FLSA, IMWL, and CMWO. According to

---

[2] The following facts are taken from plaintiff's complaint and are assumed to be true for purposes of this motion to dismiss. See Murphy v. Walker, 51 F.3d 714, 717 (7th Cir. 1995).

defendant, plaintiffs' claims are not properly before this court because the Agreement they signed contains both an arbitration clause and a class action waiver.

## DISCUSSION

### I. Standard of Review

Courts review a motion to compel arbitration under a summary judgment standard in accordance with Federal Rule of Civil Procedure 56(c). Tickanen v. Harris & Harris, Ltd., 461 F.Supp.2d 863, 866 (E.D.Wis. 2006). Movants are required to "provide sufficient evidence in support of their claims such that a reasonable jury could return a verdict for them under applicable law." WFC Commodities Corp. v. Linnco Futures Group, Inc., 1998 WL 834374, at *2 (N.D. Ill. Nov. 25, 1998). The court may consider exhibits and affidavits regarding the arbitration agreement in question. Reineke v. Circuit City Stores, Inc., 2004 WL 442639, at *1 (N.D. Ill. Mar. 8, 2004).

Under the FAA, federal courts are in the gatekeeper position of determining whether a dispute is one that the parties intended to arbitrate and is therefore arbitrable. See AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643 (1986). The FAA was passed to ensure that valid agreements to arbitrate would be enforced by courts. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985). Even still, a party cannot be forced to arbitrate a claim without previously agreeing to arbitrate that claim. See Kiefer Specialty Flooring, Inc. v. Tarkett, 174 F.3d 907, 909 (7th Cir. 1999); see also AT&T Techs., Inc., 475 U.S. at 648 ("arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration"). Additionally, courts "may not expand the application of an arbitration clause beyond its intended scope." Thomas v. Am. Gen. Fin., Inc., 2009 WL 781078, at *2 (N.D. Ill. Mar. 23, 2009) (citing Am. United Logistics, Inc. v. Catellus Dev. Corp., 319

3

F.3d 921, 929 (7th Cir. 2003)). Accordingly, "when presented with a question of arbitrability, the court will defer to the parties' intent to determine: (1) whether there is a valid arbitration agreement; and (2) whether the parties' dispute falls within the scope of that agreement." Id.

**II.     Analysis**

**A.     The Arbitration Provision**

Plaintiffs do not challenge the validity of the arbitration provision in the Agreement they signed, or that their claims would fall within its scope. Instead, plaintiffs argue that they are not obligated to arbitrate their claims because defendant was not a signatory to the Agreement, and the arbitration provision applies only to the signatories: plaintiffs and Partsfleet. Defendant argues that, as a third-party beneficiary to the Agreement, it is entitled to enforce the arbitration provision.[3] The court agrees.

As a threshold matter, the court applies state law when deciding whether a non-signatory to a contract can enforce an arbitration provision contained in that contract. Scheurer v. Fromm Family Foods, LLC, 863 F.3d 748, 752 (7th Cir. 2017). Illinois law generally holds that, "[o]nly signatories to an arbitration agreement can file a motion to compel arbitration." Bishop v. We Care Hair Dev. Corp., 316 Ill.App.3d 1182, 250 Ill.Dec. 394, 738 N.E.2d 610, 619 (1st Dist. 2000). There are, however, "certain 'contract-based theories under which a nonsignatory may be bound to the arbitration agreements of others,' including the third-party beneficiary doctrine." Cont'l Cas. Co. v. Am. Nat. Ins. Co., 417 F.3d 727, 734 (7th Cir. 2005) (quoting Ervin v. Nokia, Inc., 349 Ill.App.3d 508, 285 Ill.Dec. 714, 812 N.E.2d 534, 539 (5th Dist. 2004)).

There are two types of third-party beneficiaries under Illinois law: intended and incidental. Estate of Willis v. Kiferbaum Const. Corp., 357 Ill. App. 3d 1002, 830 N.E.2d 636

---

[3] Defendant also argues that it is entitled to enforce the arbitration provision on the basis of equitable estoppel. Because the court finds that defendant can enforce the arbitration provision as a third-party beneficiary to the Agreement, it need not address this argument.

4

(1st Dist. 2005). "An intended beneficiary is intended by the parties to the contract to receive a benefit for the performance of the agreement and has rights and may sue under the contract; an incidental beneficiary has no rights and may not sue to enforce them." Id. at 643 (internal citation omitted). An intended third-party beneficiary is entitled to enforce contract terms when "the liability of a promisor to the beneficiary . . . affirmatively appear[s] from the language of the instrument." Cont'l Cas. Co., 417 F.3d at 734 (internal quotation omitted). Additionally, "the contract must be made for the *direct* benefit of the third party." Id. (emphasis in original) (citing Swavely v. Freeway Ford Truck Sales, Inc., 298 Ill.App.3d 969, 700 N.E.2d 181, 185 (1st Dist. 1998); Cahill v. E. Benefit Sys., Inc., 236 Ill.App.3d 517, 603 N.E.2d 788, 791 (1st Dist. 1992)). "It is not necessary that the beneficiary be identified by name in the contract, but it must be identified in some manner, for example, by describing the class to which it belongs." Id. at 734–35 (citing Holmes v. Fed. Ins. Co., 353 Ill.App.3d 1062, 820 N.E.2d 526, 530 (2004)). Because these principles apply to arbitration agreements, when "the signatories to the agreement intended that the nonsignatories were to derive benefits from the agreement and where the arbitration clause itself is susceptible to this interpretation, then arbitration is proper." Dannewitz v. Equicredit Corp. of Am., 333 Ill. App. 3d 370, 373 (1st Dist. 2002).

   Defendant argues that it is entitled to enforce the arbitration provision in the Agreement between plaintiffs and Partsfleet because it is Partsfleet's customer, and services plaintiffs provided to Partsfleet's customers, as well as the customers themselves, are encompassed in the Agreement, including the arbitration provision. Plaintiffs concede that defendant is Partsfleet's customer, but argue that defendant is not an intended beneficiary of the arbitration provision of the Agreement. According to plaintiffs, the arbitration provision explicitly excludes defendant by its plain language. Specifically, plaintiffs note that the arbitration provision begins with, "[i]n

the event of a dispute between the parties . . . ." Plaintiffs then rely on language outside of the arbitration provision to define the parties as plaintiffs and Partsfleet, and point to Section B of the arbitration provision, which provides that "PARTSFLEET and CONTRACTOR" will select the arbitrator by mutual agreement. Plaintiffs claim that this language precludes defendant from enforcing the arbitration provision, especially because the word "customer" is absent from the arbitration provision, and "[w]hen the agreement means to include [defendant], it uses the word 'customer.'" Doc. 18 at 7. It follows, according to plaintiff, that the arbitration provision cannot be interpreted as applying to defendant, or any third party. Plaintiff is mistaken.

Defendant is entitled to enforce the arbitration provision in the Agreement plaintiffs signed because it is susceptible to the interpretation that the parties intended that nonsignatories would derive benefits from it, as Illinois law requires. Dannewitz, 333 Ill. App. 3d at 373. This is so for at least two reasons. First, the word "customer" is, in fact, included in the arbitration provision, which reads:

> This Arbitration Provision is intended broadly to apply to all controversies hereafter arising out of or related to the parties' relationship or CONTRACTOR'S performance of services for PARTSFLEET or its customers, as well as any existing controversy that has arisen from the parties' relationship or CONTRACTOR'S performance of services for PARTSFLEET or its customers, as is permitted under Section 2 of the Federal Arbitration Act.

Doc. 14, Exh. 1-A at 10 (emphasis added).

The Agreement in its entirety refers to Partsfleet's "customers" dozens of times (thirty-four according to defendant), and plaintiffs agree that defendant is Partsfleet's customer. Additionally, the arbitration provision provides that it applies to any dispute related to the Agreement or "the service arrangement contemplated by th[e] Agreement." Id. at 8. That service arrangement includes "all services arranged by PARTSFLEET or its Customer and

6

performed by CONTRACTOR." Id. at 1. Given this language found throughout the Agreement, including the arbitration provision, the court finds that defendant is an intended beneficiary of the Agreement, and is entitled to enforce the arbitration provision as third-party beneficiary of that provision. The cases that plaintiffs cite to support their argument that defendant is not a third-party beneficiary of the arbitration provision are inapt.

Plaintiffs first rely on Ervin v. Nokia, Inc., 349 Ill. App. 3d 508 (5th Dist. 2004). In Ervin, the court found that a cellular phone manufacturer was not a third-party beneficiary to an arbitration agreement between the purchaser of the phone and his service provider. Id. at 514. What plaintiffs fail to mention is that the terms and conditions of the agreement entered into between the purchaser of the cellular phone and the service provider explicitly disclaimed any application of the agreement to third parties. Id. at 511. Additionally, the agreement contained a "Limitation of Liability" section, which provided that the service provider was not liable for equipment failure or modification. These facts are wildly dissimilar to those before this court.

Next, plaintiffs look to Dannewitz, 333 Ill. App. 3d 370, to support their argument. In Dannewitz, the arbitration agreement entered into by the parties explicitly applied to certain third party assignees in one sentence, but in another it cabined that language by providing that assignees were included "if, and only if, such third party is named as a codefendant with us in a Claim asserted by you." Id. at 371. The court found the provision inconsistent, and resolved the inconsistency against the drafter of the agreement. Id. at 372. No such inconsistency exists in the Agreement instant case, or an explicit exclusion of third parties. Because the facts before this court are inapposite, Dannewitz does not control.[4]

---

[4] Plaintiffs also rely on Johnson v. Noble, 240 Ill. App. 3d 731, 733 (1st Dist. 1992), seemingly for the proposition that an arbitration provision must be susceptible to an interpretation that the signatories intended that nonsignatories would derive benefits from the agreement. The court accepts this principle, as discussed above, and need not discuss Johnson further. Plaintiffs

Second, the arbitration provision explicitly provides that it applies to "disputes regarding any city, county, state or federal wage-hour law," including the FLSA. Doc 14, Exh. A at 8. Additionally, the entire purpose of the Agreement that plaintiffs entered into with defendant was to "establish[ ] the terms applicable to all services arranged by PARTSFLEET or its customer [Worldpac] and performed by CONTRACTOR." Id. at 1. Given that plaintiffs entered into the Agreement for the purpose of performing services for Partsfleet's customers, the arbitration provision explicitly includes disputes arising out of plaintiffs' performance of services for Partsfleet's customers, and plaintiffs concede that defendant is Partsfleet's customer, plaintiffs cannot now claim that they never agreed to arbitrate with defendant. See F.W. Hempel & Co., Inc. v. Metal World, Inc., 721 F.2d 610, 613 (7th Cir. 1983) ("The express language of the contract and the surrounding circumstances at the time the contract was executed determine whether or not the contracting parties intended to benefit a third party directly.")

To the extent that plaintiffs urge the court to resolve ambiguities in the Agreement in their favor, the court need not. For all of the reasons discussed above, the Agreement is not ambiguous, and defendant is a third-party beneficiary of it.

### B. The Class Action Waiver

Courts generally compel arbitration upon finding a valid arbitration agreement. Corrigan v. Domestic Linen Supply Co., Inc., 2012 WL 2977262, at *2 (N.D. Ill. July 20, 2012). "In accordance with the FAA courts are required to stay proceedings until arbitration is held if the court determines there is an agreement in writing to submit to arbitration and the proceeding filed with the court is subject to arbitration under this agreement." Id. (internal quotation omitted). In the instant case, however, the arbitration provision in the Agreement entered into by

---

further rely on cases outside of Illinois to support their argument. These cases are neither controlling nor persuasive.

8

plaintiffs and defendant contained a Class Action Waiver. That waiver provides that plaintiffs are permitted to proceed, even in arbitration, on an individual basis only. The Seventh Circuit has held such provisions invalid. Lewis v. Epic Sys. Corp., 823 F.3d 1147 (7th Cir. 2016). That issue is now before the United States Supreme Court, and was argued October 2, 2017. See Epic Sys. Corp. v. Lewis, 137 S. Ct. 809, 196 L. Ed. 2d 595 (2017). The parties agree that this court should defer final ruling on defendant's motion to dismiss and compel individual arbitration until that issue is resolved. The court agrees that this is the most sensible way to proceed. Accordingly, the court grants defendant's motion to stay the proceedings.

## CONCLUSION

For the reasons discussed above, the court grants in part and denies in part defendant's motion to dismiss and compel individual arbitrations or to stay the proceedings (doc. 13). The court finds that the Independent Contractor Agreement compels individual arbitration, and stays further proceedings pending the final ruling in Epic Sys. Corp. v. Lewis, 137 S. Ct. 809.

**ENTER:** February 1, 2018

_____
**Robert W. Gettleman**
**United States District Judge**